# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| American Efficient LLC and Affirmed Energy LLC,<br><br>                    Plaintiffs,<br><br>     v.<br><br>Federal Energy Regulatory Commission; Mark C. Christie, Willie L. Phillips, David Rosner, Lindsay S. See, and Judy W. Chang, *in their official capacities as Commissioners of the Federal Energy Regulatory Commission*,<br><br>                    Defendants. | **Case No. 1:25-cv-68**<br><br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

NATURE OF THE MATTER ........................................................................ 1

    A.    American Efficient's Longstanding Participation In Wholesale Electric Capacity Markets ............................................................................... 3

    B.    FERC's Exercise Of Judicial Powers ................................................... 6

    C.    FERC's Unfounded Investigation And Proposed Penalty Assessment ...... 9

QUESTION PRESENTED ........................................................................... 11

ARGUMENT ............................................................................................ 12

I.    American Efficient Is Likely To Succeed On Its Claims That FERC's Penalty-Assessment Proceeding Violates The Seventh Amendment And Article III ................... 12

    A.    The Seventh Amendment Jury Trial Right Applies To FERC's Claims ............. 12

    B.    FERC's Claims Must Be Tried In An Article III Court .......................... 17

    C.    Subsequent Article III Review Does Not Validate FERC's Proceeding .............. 20

II.    The Remaining Equitable Factors Favor A Preliminary Injunction ................................. 23

    A.    Immediate Relief Is Needed To Prevent Further Irreparable Harm ................ 23

    B.    The Balance Of Equities Weighs In Favor Of Preliminary Relief ................. 28

CONCLUSION ........................................................................................ 29

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*1616 Reminic Ltd. P'ship v. Atchison & Keller Co.*,
704 F.2d 1313 (4th Cir. 1983) ............................................................... 17

*Air Evac EMS, Inc. v. McVey*,
37 F.4th 89 (4th Cir. 2022) ..................................................................... 26

*Am. Dairy Queen Corp. v. YS&J Enters.*,
2014 WL 1327017 (E.D.N.C. Apr. 2, 2014) ........................................... 29

*American Efficient, LLC*,
189 FERC ¶ 61,196 (2024) .......................................................... 9, 10, 14

*Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430
U.S. 442 (1977) ....................................................................................... 19

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
598 U.S. 175 (2023) ............................................................................ 2, 23

*Bryan v. BellSouth Commc'ns, Inc.*,
377 F.3d 424 (4th Cir. 2004) ............................................................... 4, 16

*BST Holdings, L.L.C. v. OSHA*,
17 F.4th 604 (5th Cir. 2021) ................................................................... 27

*Burgess v. FDIC*,
639 F. Supp. 3d 732 (N.D. Tex. 2022) ................................................... 23

*Career Colls. & Schs. of Tex. v. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) ................................................................... 19

*Centro Tepeyac v. Montgomery Cnty.*,
722 F.3d 184 (4th Cir. 2013) ................................................................. 28

ii

*City Power Mktg.*,
    152 FERC ¶ 61,012 (2015) ................................................................ 22

*Coaltrain Energy, L.P.*,
    155 FERC ¶ 61,204 (2016) ........................................................... 21, 22

*Coastal Oil & Gas Corp. v. FERC*,
    782 F.2d 1249 (5th Cir. 1986) ........................................................ 14

*ETRACOM*,
    155 FERC ¶ 61,284 (2016) ............................................................. 21

*FERC v. Maxim Power Corp.*,
    196 F. Supp. 3d 181 (D. Mass. 2016) ............................................. 7

*FERC v. Powhatan Energy Fund, LLC*,
    949 F.3d 891 (4th Cir. 2020) ................................................. 7, 8, 22

*Giovani Carandola, Ltd. v. Bason*,
    303 F.3d 507 (4th Cir. 2002) .......................................................... 24

*Gordon v. Holder*,
    721 F.3d 638 (D.C. Cir. 2013) ....................................................... 23

*Houlian Chen Powhatan Energy Fund*,
    151 FERC ¶ 61,179 (2015) ............................................................. 22

*In re NTE Connecticut, LLC*,
    26 F.4th 980 (D.C. Cir. 2022) ....................................................... 26

*Laboratory Corp. of Am. Holdings v. Kearns*,
    84 F. Supp. 3d 447 (M.D.N.C. 2015) ........................................... 27

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
    2 F.4th 330 (4th Cir. 2021) (en banc) ......................... 12, 23, 27, 28

*Legend Night Club v. Miller*,
    637 F.3d 291 (4th Cir. 2011) .......................................................... 28

iii

*Liu v. SEC*,
591 U.S. 71 (2020) ........................................................................................ 14

*Lytle v. Household Mfg., Inc.*,
494 U.S. 545 (1990) ...................................................................................... 15

*Midcontinent Indep. Sys. Operator, Inc.*,
186 FERC ¶ 61,088 (2024) ........................................................................... 16

*Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish*
*Cnty., Wash.*, 554 U.S. 527 (2008) ................................................................ 4

*Nicole Gas Production, Ltd.*,
105 FERC ¶ 61,371 (2003) ........................................................................... 16

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
24 F.4th 271 (4th Cir. 2022) ........................................................................ 16

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) ........................................................................ 29

*PJM Interconnection, L.L.C.*,
117 FERC ¶ 61,331 (2006) ............................................................................. 5

*PJM Interconnection, L.L.C*,
126 FERC ¶ 61,275 (2009) ............................................................................. 5

*PJM Interconnection, L.L.C.*,
189 FERC ¶ 61,095 (2024) ............................................................................. 5

*Planned Parenthood of Cent. N.C. v. Cansler*,
804 F. Supp. 2d 482 (M.D.N.C. 2011) .......................................................... 29

*Revised Policy Statement On Enforcement*,
123 FERC ¶ 61,156 (2008) ............................................................................. 7

*Ross v. Meese*,
818 F.2d 1132 (4th Cir. 1987) ...................................................................... 23

iv

*SEC v. Jarkesy*,
603 U.S. 109 (2024) ..............................................................1, 2, 12-22

*Shell Energy N. Am. (US), L.P. v. FERC*,
107 F.4th 981 (D.C. Cir. 2024) ........................................... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................... 19

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
988 F.3d 690 (4th Cir. 2021) ............................................. 26

*Vitol Inc. & Federico Corteggiano*,
169 FERC ¶ 61,070 (2019) ........................................... 8, 21

*Wage & Whites Lion Invs., L.L.C. v. FDA*,
16 F.4th 1130 (5th Cir. 2021) ............................................ 26

*Wisconsin Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ........................................... 26

## STATUTES, RULES, AND REGULATIONS

17 C.F.R. § 240.10b-5 ............................................................ 10, 15

18 C.F.R. § 1c.2 .................................................................... 10, 15

18 C.F.R. § 35.34 ..................................................................... 3

18 C.F.R. § 385.209(a)(2) ......................................................... 7

18 C.F.R. § 385.711 .................................................................. 9

18 C.F.R. § 385.2201(c)(1)(i) ...................................................... 7

5 U.S.C. § 554 ........................................................................ 8

15 U.S.C. § 78j ...................................................................... 15

v

16 U.S.C. § 823b(c) ......................................................................................... 2

16 U.S.C. § 823b(d)(1) ............................................................................... 6, 11

16 U.S.C. § 823b(d)(2)(A) ............................................................................ 8, 9

16 U.S.C. § 823b(d)(3) ................................................................................... 22

16 U.S.C. § 823b(d)(3)(A) ............................................................................... 7

16 U.S.C. § 823b(d)(3)(B) ............................................................................... 8

16 U.S.C. § 824v ...................................................................................... 10, 15

16 U.S.C. § 825o-1(b) ............................................................................... 6, 13

*Civil Monetary Penalty Inflation Adjustments*,
    89 Fed. Reg. 1806 (Jan. 11, 2024) .......................................................... 6

Fed. R. Civ. P. 65(c) ..................................................................................... 29

FERC, *Revised Policy Statement on Penalty Guidelines*,
132 FERC 61,216 (2010) ......................................................................... 13, 14

*Prohibition of Energy Market Manipulation*, Order No. 670, 71 Fed. Reg.
    4244, 4246 (Jan. 26, 2006) ..................................................................... 15

U.S. Const. amend. VII ...................................... 12, 13, 14, 15, 17, 21, 22, 24

## OTHER AUTHORITIES

*Tariff*, FERC Glossary,
    https://www.ferc.gov/about/what-ferc/about/glossary ............................... 4

*Regional Transmission Organization (RTO)*, FERC Glossary,
    https://www.ferc.gov/industries-data/market-assessments/overview/g
    lossary ....................................................................................................... 3

vi

## NATURE OF THE MATTER

The Federal Energy Regulatory Commission, or "FERC," has initiated an in-house agency proceeding through which it seeks to assess the largest monetary award in its history—nearly $1 billion in civil penalties and disgorgement—against American Efficient LLC and Affirmed Energy LLC (collectively, "American Efficient"), among others. FERC's legal claims against American Efficient, based on alleged market manipulation and violation of FERC-approved tariffs, are factually and legally unfounded, as American Efficient has made clear to FERC throughout the sprawling years-long investigation and now penalty-assessment proceeding. But, more fundamentally, FERC's proceeding—which threatens to render American Efficient insolvent—is manifestly unconstitutional.

The Supreme Court recently held in *SEC v. Jarkesy*, 603 U.S. 109 (2024), that agency claims that are legal in nature—even if they derive from statute and are brought by the government—must be adjudicated prior to assessment of any penalty in an Article III court with a jury trial right, not in an agency proceeding. *Jarkesy* controls here. FERC's claims are indisputably legal in nature; in fact, one of FERC's claims, based on purported violations of its anti-manipulation regulation, is directly modeled on the securities fraud regulations at issue in *Jarkesy*. And, just as in *Jarkesy*, the narrow

1

"public rights" exception does not authorize FERC to assess staggering monetary penalties against American Efficient through in-house proceedings that do not provide the right to a jury trial. American Efficient is likely, indeed virtually certain, to prevail on the merits of this constitutional claim—as the dissent in *Jarkesy* pointed out. *See id.* at 199-200 (Sotomayor, J., dissenting) (citing FERC's penalty assessment authority under 16 U.S.C. § 823b(c) as example of regulatory scheme imperiled under the majority's analysis).

The other preliminary injunction factors readily support preliminary relief. FERC's imminent, constitutionally illegitimate proceeding should be enjoined to avoid further irreparable harm to American Efficient. Standing alone, the fact that American Efficient is subject to an unconstitutional proceeding represents a "'here-and-now injury,'" *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023), that can be remedied only through preliminary relief. But the irreparable harm here to American Efficient is even more palpable: Unless enjoined, FERC's proceeding will jeopardize American Efficient's existence before it ever has its constitutional claims adjudicated— irreparable injury by any conceivable measure.

In such circumstances, the balance of equities easily favors preliminary relief because FERC faces no cognizable harm from being prevented from violating the

2

Constitution.  American Efficient respectfully requests a preliminary injunction against FERC's penalty-assessment proceeding.

## STATEMENT OF FACTS

### A.  American Efficient's Longstanding Participation In Wholesale Electric Capacity Markets

American Efficient has operated as one of the nation's largest aggregators of distributed energy resources.  It has focused on energy efficiency resources ("EERs")—small-scale energy resources that provide cost and energy savings—and has worked for a nearly a decade to make those resources available on the supply-side of wholesale electric capacity markets.  Declaration of F. Bo Clayton ("Clayton Decl.") ¶ 4.  American Efficient has offered EERs in capacity auctions overseen by Regional Transmission Organizations ("RTOs") (such as PJM Interconnection, L.L.C. ("PJM") and Midcontinent Independent System Operator, Inc. ("MISO")).  RTOs are "voluntary organization[s] of electric transmission owners, transmission users and other entities approved by [FERC]" and are subject to FERC's oversight.  *Regional Transmission Organization (RTO)*, FERC Glossary[1]; *see also* 18 C.F.R. § 35.34.  RTOs generally seek

---

[1]      https://www.ferc.gov/industries-data/market-assessments/overview/glossary (last accessed Jan. 28, 2025).

3

to procure a sufficient supply of electricity through capacity auctions to meet their prediction of energy demand several years in the future.

Participation in capacity auctions is governed by the RTO's "tariffs." "Tariffs," as that term is used here, are a "compilation of all effective rate schedules of a particular company or utility," and include "General Terms and Conditions along with a copy of each form of service agreement." *Tariff*, FERC Glossary.[2] Tariffs accordingly define the rights and obligations of market participants and play an analogous role, and are an alternative, to bilateral contracts. *See Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527, 531 (2008) (describing the role of contracts and tariffs under the Federal Power Act). Proposed tariffs must be filed with FERC for authorization, and once authorized, "carr[y] the force of federal law." *Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 429 (4th Cir. 2004).

The supply of energy in wholesale capacity auctions can come in two forms—the production of electricity and the reduction of energy consumption. Generally speaking, EER providers participate in these auctions by offering the reduction of energy consumption. FERC has not only authorized, but encouraged, the inclusion of EERs in

---

[2]     https://www.ferc.gov/about/what-ferc/about/glossary (last accessed Jan. 23, 2025).

4

wholesale capacity markets since 2006, *see PJM Interconnection, L.L.C.*, 117 FERC ¶ 61,331, P 131 (2006), and in PJM's market specifically since 2009, *PJM Interconnection, L.L.C*, 126 FERC ¶ 61,275, P 130 (2009).[3]

In accord with market rules approved by FERC, American Efficient has participated in PJM's capacity markets as an EER provider since 2014 through its subsidiary, Affirmed Energy, and previously, Wylan Energy, L.L.C. Clayton Decl. ¶ 4. To offer EERs in capacity markets, American Efficient has purchased exclusive contractual rights to the capacity reductions from program partners, including manufacturers, retailers, and distributors. *Id.* Specifically, American Efficient has purchased the right to the capacity reductions associated with eligible energy efficient products. To obtain those contractual rights, American Efficient has paid its program partners with per-unit compensation for each unique energy efficient product they sell. *Id.* American Efficient has then aggregated, measured, and verified the energy capacity reductions it has offered in capacity auctions. Clayton Decl. ¶ 5. And it has backed its

---

[3]    FERC recently approved revisions to PJM's tariff that would "prospectively sunset [EER] participation in PJM's wholesale capacity market," *PJM Interconnection, L.L.C.*, 189 FERC ¶ 61,095 (2024), but that policy change does not affect the merits of American Efficient's constitutional challenges here.

5

commitments to deliver such capacity based on these EERs with significant collateral. *Id*. ¶ 6.

## B. FERC's Exercise Of Judicial Powers

FERC has a broad statutory mandate and wields capacious powers. Administering three major statutes—the Federal Power Act, the Natural Gas Act, and the Natural Gas Policy Act—along with multiple others, FERC superintends the nation's interstate electricity markets.

Among its significant powers, FERC has statutory authority to impose sweeping civil penalties administratively. By statute, FERC may assess penalties of approximately $1,500,000 per day and per violation, against "[a]ny person who violates" certain parts of the Federal Power Act or "any provision of any rule or order thereunder." 16 U.S.C. § 825o-1(b); *Civil Monetary Penalty Inflation Adjustments*, 89 Fed. Reg. 1806 (Jan. 11, 2024) (inflation adjustments for FERC's statutory penalties).

FERC's penalty-assessment scheme under the Federal Power Act, the statute relevant here, works as follows. Before FERC may "issu[e] an order assessing a civil penalty," it must provide notice of a "proposed penalty." 16 U.S.C. § 823b(d)(1). By regulation, FERC purports to satisfy the notice requirement by issuing an Order to Show Cause ("OSC") to a party alleged to have violated the law. *See* 18 C.F.R.

6

§ 385.209(a)(2). "The OSC describes the alleged violations and directs the recipient to demonstrate why FERC should not assess the proposed penalty." *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 895 (4th Cir. 2020).

An OSC "commences" an agency adjudicative proceeding. *Powhatan*, 949 F.3d at 895. FERC's regulations make that clear. *See* 18 C.F.R. § 385.2201(c)(1)(i); *id.* § 385.209(a)(2); *Revised Policy Statement On Enforcement*, 123 FERC ¶ 61,156, P 62,014 (2008). Following an OSC, the Federal Power Act creates two pathways for adjudication, neither of which includes a jury trial prior to civil penalty assessment:

First, under a "Prompt Penalty Assessment Pathway," a respondent can elect an agency proceeding in which FERC itself "shall promptly assess" a civil penalty "by order." 16 U.S.C. § 823b(d)(3)(A). FERC considers a respondent's answer to the OSC and determines "whether to issue a penalty if it f[inds] that [the respondent] committed the alleged violations." *FERC v. Maxim Power Corp.*, 196 F. Supp. 3d 181, 188 (D. Mass. 2016). This agency procedure involves "extensive factfinding and the application

7

of law to fact," *Powhatan*, 949 F.3d at 900, and ends with FERC "assess[ing]" civil

penalties if it determines liability, 16 U.S.C. § 823b(d)(3)(B)—as it often does.[4]

Once FERC assesses a civil penalty, if the penalty is not "paid within 60 days of

the issuance of [FERC's penalty assessment] order," interest begins to accrue from the

date payment was due, *Vitol Inc. & Federico Corteggiano*, 169 FERC ¶ 61,070, P 61,397

(2019), and FERC may "institute an action in the appropriate district court of the United

States for an order affirming the assessment of the civil penalty," 16 U.S.C.

§ 823b(d)(3)(B). In that separate action, the district court "shall have authority to review

de novo the law and the facts involved, and shall have jurisdiction to enter a judgment

enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part,

such assessment." *Id.*

Second, as an alternative to the Prompt Penalty Assessment Pathway, a respondent

may request the "ALJ Pathway," which involves an agency hearing before a FERC ALJ.

*See* 16 U.S.C. § 823b(d)(2)(A) (citing 5 U.S.C. § 554). Exceptions to the ALJ's initial

---

[4] *See* Oral Testimony of Larry R. Parkinson, Director, FERC Office of
Enforcement, Discussion Draft on Accountability and Department of Energy Perspective
on Title IV: Energy Efficiency, at 20-21 (June 3, 2015) (explaining that FERC
Commissioners oversee enforcement efforts and that there "is remarkable consensus" on
"virtually all enforcement matters").

8

decision are then filed with FERC, *see* 18 C.F.R. § 385.711, and following a

"determination of violation," FERC "shall assess the penalty, by order." 16 U.S.C.

§ 823b(d)(2)(A). A respondent may then seek review of the penalty and order in a

federal appellate court. *Id.* § 823b(d)(2)(B).

## C. FERC's Unfounded Investigation And Proposed Penalty Assessment

Despite FERC policy approving the participation of EERs in wholesale capacity

markets, FERC issued an OSC directed at American Efficient in December 2024, based

on proposed findings submitted by FERC's Office of Enforcement, following an

investigation initiated in May 2021. *American Efficient, LLC*, 189 FERC ¶ 61,196

(2024). Remarkably, the OSC directs American Efficient to "show cause" why it "should

not" be held liable for $722 million in civil penalties and more than $250 million in

disgorged profits—staggering amounts that would represent by far the largest imposed

award in FERC's history. The OSC is based on two legal claims: first, market

manipulation (or fraud) in violation of the Federal Power Act and FERC rules; and

second, violations by American Efficient of the PJM and MISO tariffs. *See id.*

FERC's market manipulation theory is that American Efficient committed fraud.

The Federal Power Act makes it unlawful for any entity "to use or employ, in connection

with the purchase or sale of electric energy … subject to the jurisdiction of [FERC], any

9

manipulative or deceptive device or contrivance … in contravention of such rules and regulations as [FERC] may prescribe." 16 U.S.C. § 824v. FERC has promulgated a so-called Anti-Manipulation Rule, 18 C.F.R. § 1c.2, that implements that statutory scheme and that closely resembles the SEC's securities fraud authorities, 17 C.F.R. §240.10b-5. FERC's claim is that American Efficient committed fraud through its EER program.

The tariff violation theory is that American Efficient breached the PJM and MISO tariffs because its EER program purportedly did not "(1) cause reductions in electricity use, (2) have a nexus with end-use customer projects, and (3) own or have contractual rights to those projects." *American Efficient*, 189 FERC ¶ 61,196, P 2 (2024).

As explained, the OSC commenced an agency adjudication. American Efficient must now answer and "show cause" why it "should not" be held liable and why American Efficient "should not" face proposed civil penalties and disgorgement. *American Efficient*, 189 FERC ¶ 61,196, PP 3-4. American Efficient vigorously contests the allegations levied against it. As American Efficient has explained throughout the FERC investigation, its program has fully complied with the tariffs and satisfies all the legal requirements for participation in capacity auctions. American Efficient has provided robust evidence that it was forthcoming with the RTOs and transparent about how its program functions consistent with all RTO tariff provisions. Yet despite the lack

10

of support for the claims levied against it, American Efficient has been ensnared for years in FERC investigatory, and now adjudicatory, proceedings with no opportunity for review by a jury or an Article III court.

Facing a statutory deadline to select between the Prompt Penalty Assessment and ALJ Pathways, 16 U.S.C. § 823b(d)(1), American Efficient elected the Prompt Penalty Assessment Pathway on January 15, 2025, preserving all its rights, including its constitutional objections to FERC's investigation and penalty proceeding. Notice of Election, American Efficient, LLC, FERC Docket No. IN24-2-000 (Jan. 15, 2024). Absent relief from this Court, American Efficient is obligated to answer to the OSC by March 17, 2025, after which point in time FERC may issue a penalty assessment order. American Efficient thus faces the imminent assessment of a staggering penalty—one that threatens to put it out of business, Clayton Decl. ¶¶ 9, 14—before any evaluation by a jury in an Article III court.

## QUESTION PRESENTED

Is American Efficient entitled to a preliminary injunction setting aside FERC's Order to Show Cause, enjoining FERC's assessment of a penalty, and enjoining any further enforcement proceedings by FERC against Plaintiffs?

11

American Efficient is entitled to a preliminary injunction because it is "likely to succeed on the merits" of its claims that FERC's penalty-assessment proceeding is unconstitutional; it is "likely," indeed certain, "to suffer irreparable harm absent preliminary relief"; "the balance of the equities favors relief"; and preliminary "relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc).

## I. American Efficient Is Likely To Succeed On Its Claims That FERC's Penalty-Assessment Proceeding Violates The Seventh Amendment And Article III

### A. The Seventh Amendment Jury Trial Right Applies To FERC's Claims

The command of the Seventh Amendment is plain: "[I]n suits at common law … the right of trial by jury shall be preserved." This right "is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121. As particularly relevant here, the Seventh Amendment helps to protect against the significant dangers inherent in "concentrat[ing] the roles of prosecutor, judge, and jury in the hands of the Executive Branch." *Id.* at 140.

12

In *Jarkesy*, the Supreme Court explained that the Seventh Amendment right to a jury trial in "[s]uits at common law" ""whatever may be the peculiar form which they may assume."" 603 U.S. at 122. This includes "statutory claims if the claim is 'legal in nature.'" *Id.* "[W]hether a suit is legal in nature," turns on the "the cause of action" and "the remedy it provides," though "the remedy [is] the 'more important' consideration." *Id.* at 122-123. In this case, as in *Jarkesy*, both remedy and the causes of action make clear that FERC's claims are legal in nature and therefore governed by the Seventh Amendment.

**Remedy.** As in *Jarkesy*, the principal remedy set forth in the OSC—civil penalties—is "all but dispositive" as to whether the Seventh Amendment applies. *Id.* at 123. A monetary remedy, such as a civil penalty, is "legal …. if it is designed to punish or deter the wrongdoer." *Id.* Here, the statute and FERC's guidelines confirm that civil penalties are designed for punishment and deterrence. As in *Jarkesy*, where penalties were tied to "culpability," *see id.* at 111, FERC is obligated to consider the "seriousness of the violation" in determining the penalty amount, 16 U.S.C. § 825o-1(b). Implementing that statutory command, FERC assesses a "culpability" score that consider factors such as a "prior history of committing violations" and "acceptance of responsibility." FERC, *Revised Policy Statement on Penalty Guidelines*, 132 FERC

13

¶ 61,216, PP 43-50 (2010); *see American Efficient*, 189 FERC ¶ 61,196, PP 81-82

(calculating a "culpability score" against American Efficient).  It is thus no surprise that

FERC's guidelines explain that civil penalties are designed to ensure "punishment" and

"deterrence."  132 FERC ¶ 61,216, P 194.  That conclusion is reaffirmed by the fact that

civil penalties are paid to the U.S. Treasury, not alleged victims, which is "final proof

that this remedy is punitive." *Jarkesy*, 603 U.S. at 124.

FERC's civil penalties against American Efficient "are designed to

punish and deter, not to compensate," they are "a type of remedy at common law that

could only be enforced in courts of law." *Id.* at 125.  That conclusion, moreover,

"effectively decides" that American Efficient is "entitled to a jury on these claims" prior

to imposition of any penalty. *Id.*

FERC's inclusion of a disgorgement remedy does not change this analysis.  For

one thing, "disgorgement is not a traditional equitable remedy," *Liu v. SEC*, 591 U.S. 71,

93 (2020) (Thomas, J., dissenting), and so the Seventh Amendment jury trial right applies

to it, like other legal claims, *see Coastal Oil & Gas Corp. v. FERC*, 782 F.2d 1249, 1253

(5th Cir. 1986) ("We can see no way to characterize the 'disgorgement' remedy in the

present case as anything other than a penalty.").  Moreover, even were disgorgement

equitable, "[w]hen," as here, "legal and equitable claims are joined in the same action,

14

'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990). Because FERC seeks disgorgement and penalties based on common issues of fact, those facts must be decided by a jury.

**Causes of Action.** Even though FERC's pursuit of substantial civil penalties alone "effectively decides that this suit implicates the Seventh Amendment," the "close relationship" between FERC's market manipulation and tariff claims and common law causes of action "confirm[] that conclusion." *Jarkesy*, 603 U.S. at 125.

Start with FERC's market manipulation claims. FERC's Anti-Manipulation Rule and Federal Power Act anti-fraud provisions closely resemble the securities fraud proscriptions at issue in *Jarkesy* and thus, for the same reasons, have a "close relationship" to common law fraud. 603 U.S. at 125; *compare* 15 U.S.C. § 78j (prohibiting "any manipulative or deceptive device") and 17 C.F.R. § 240.10b-5 *with* 16 U.S.C. § 824v (prohibiting "any manipulative or deceptive device" and citing 15 U.S.C. § 78j) and 18 C.F.R. § 1c.2. Indeed, FERC's Anti-Manipulation Rule is "modeled … on Rule 10b-5." *Prohibition of Energy Market Manipulation*, Order No. 670, 71 Fed. Reg. 4244, 4246 (Jan. 26, 2006). As the Supreme Court stated, securities fraud bears a "close relationship" to "common law fraud" because both claims "target the same basic conduct:

15

misrepresenting or concealing material facts." *Jarkesy*, 603 U.S. at 125. That holding applies straightforwardly to the near-identical provisions in the Anti-Manipulation Rule and Federal Power Act.

FERC's tariff claims also bear a close, albeit not "identical," relationship to common law claims. *Jarkesy*, 603 U.S. at 126. FERC tariffs are analogous to contracts. Although "federal tariffs are the law, not *mere* contracts," *Bryan*, 377 F.3d at 429 (emphasis added), tariffs resemble and serve as alternatives to bilateral contracts, setting forth the terms and conditions governing participation in interstate electricity markets. *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC,* 24 F.4th 271, 276 (4th Cir. 2022) ("As the relevant regulatory tariffs, the PJM Tariff and Operating Agreement together 'conclusively and exclusively enumerate the rights and liabilities of the contracting parties.'"); *Shell Energy N. Am. (US), L.P. v. FERC*, 107 F.4th 981, 985 (D.C. Cir. 2024) (tariffs are an alternative to bilateral contracts); *see also, e.g.*, MISO Tariff § 12B.4 ("For the purpose of this federal participation provision, the term 'Contract' shall mean this Tariff."). FERC thus interprets tariffs "in accordance with general contract law." *Midcontinent Indep. Sys. Operator, Inc.*, 186 FERC ¶ 61,088, P 29 (2024); *accord Nicole Gas Production, Ltd*., 105 FERC ¶ 61,371, P 9 (2003) ("Like a contract, a tariff must be interpreted to give meaning to all provisions of the tariff."). And there is no

16

question that contract-law claims are "the stuff of the traditional actions at common law." *1616 Reminic Ltd. P'ship v. Atchison & Keller Co.*, 704 F.2d 1313, 1317 (4th Cir. 1983). Thus, although FERC's claims that American Efficient has breached operative tariffs are not "identical" to private contract-law actions, the "close relationship" between the claims "confirms that this action is 'legal in nature.'" *Jarkesy*, 603 U.S. at 126.

### B.     FERC's Claims Must Be Tried In An Article III Court

Because FERC's claims against American Efficient are "legal in nature," they "implicate" the Seventh Amendment. *Jarkesy*, 603 U.S. at 126-127.  Congress may, therefore, "avoid a jury trial" only if this action falls under the narrow "public rights" exception, pursuant to which "Congress may assign the matter for decision to an agency without a jury." *Id.* at 127.  But, as in *Jarkesy*, "this case does not fall within the exception, so Congress may not avoid a jury trial by preventing the case from being heard before an Article III tribunal" prior to imposition of the penalty.  *Id.*

As the Court explained in *Jarkesy*, Congress may not "withdraw[] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'"  603 U.S. at 132.  "On that basis," the Court has "repeatedly explained that matters concerning private rights may not be removed from Article III courts," and the "hallmark" of whether a suit "concerns private rights is whether it 'is

17

made of the "stuff of the traditional actions at common law.'" *Id.* at 127-128. "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id.* at 128. However, there is a narrow category of matters called "public rights" that "historically could have been determined exclusively by [the executive and legislative branches]" which Congress can properly assign for agency adjudication. *Id.* *Jarkesy* did not profess to "definitively explain[] the distinction between public and private rights," but it made clear that any new assertion of the doctrine must be evaluated "with care." 603 U.S. at 131. "The public rights exception is, after all, an *exception*" that "has no textual basis in the Constitution." *Id.* And even for matters that fall into the public rights exception, "the presumption is in favor of Article III courts." *Id.* at 132.

This case involves private, not public, rights. To begin with, this case is not among the specific traditional categories of public rights enumerated in *Jarkesy*. Drawing on precedent and history, the Court in *Jarkesy* identified public rights as those relating to collection efforts for failure to pay money into the U.S. treasury, penalties imposed based on Congress's immigration and foreign commerce authorities, tariffs imposed on foreign commerce, relations with Indian tribes, the administration of public lands, and the granting of public benefits like payments to veterans, pensions, and patent

18

rights. 603 U.S. at 128-130.  Because FERC's market manipulation and tariff claims

against American Efficient bear no resemblance to those traditional categories, the public

rights exception does not apply.

The same conclusion follows from a straightforward application of the public

rights framework embraced in *Jarkesy*.  Because FERC's claims are "in the nature of an

action at common law," they "presumptively concerns private rights, and adjudication by

an Article III court is mandatory." *Jarkesy*, 603 U.S. at 128.  In particular, an action

analogous to common law fraud, like the Anti-Manipulation Rule claim here, "involves a

'matter[ ] of private rather than public right,'" *id*. at 134, and "'[p]rivate rights' have

traditionally included … contract rights," which are akin to the alleged tariff violations

here, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 344 (2016) (Thomas, J., concurring);

*Career Colls. & Schs. of Tex. v. Dep't of Educ.*, 98 F.4th 220, 248 (5th Cir. 2024)

(describing "contract rights" as among "the very paradigm of private rights").  This case,

therefore, does not resemble *Atlas Roofing Co. v. Occupational Safety and Health Review

Comm'n*, 430 U.S. 442 (1977), where the Supreme Court upheld agency adjudication for

claims pertaining to violations of occupational safety and health regulations, which did

not "trace[] their ancestry to the common law," *Jarkesy*, 603 U.S. at 137.  In any event, as

the Supreme Court has recognized, *Atlas Roofing* likely is no longer good law "to the

19

extent that [it] construed the public rights exception to allow the adjudication of civil penalty suits in administrative tribunals." *Id.* at 136 & n.3.

It does not matter that FERC's claims might arise from "novel statutory regimes," or that FERC pursues the claims as a government agency. *Jarkesy*, 603 U.S. at 139. "[W]hat matters is the substance of the suit," and, just as in *Jarkesy*, the substance of FERC's claims is dispositive: "the Government has created claims whose causes of action are modeled on common law"; FERC's "object" in critical ways "is to regulate transactions between private" parties (including, American Efficient and RTOs); and Congress has created a "remedy" (civil monetary penalties) historically "available only in law courts." *Id.* at 135-136. FERC's claims, therefore, represent "a common law suit in all but name," and "must be adjudicated in Article III courts," *id.* at 136, not an in-house agency proceeding.

## C. Subsequent Article III Review Does Not Validate FERC's Proceeding

Unlike the SEC, FERC is limited to administrative penalty assessments; it has no authority to bypass an administrative assessment by bringing an action in federal court to seek civil penalties. *Jarkesy*, 603 U.S. at 200 (Sotomayor, J., dissenting) ("[FERC] … can pursue civil penalties only in agency enforcement proceedings."). The Federal Power Act's penalty scheme, however, involves two roles for Article III courts, through the ALJ

20

and Prompt Penalty Assessment Pathways described above.  Neither satisfies the Seventh Amendment.

The ALJ Pathway resembles the SEC adjudication scheme in *Jarkesy*.  Under the ALJ Pathway, there is no jury involvement before the agency assesses a penalty, and subsequent "judicial review" is limited to review by an appellate court, 603 U.S. at 117.  Thus, although an Article III appellate court can review a FERC penalty order that is in turn based on an ALJ decision, that pathway involves no jury right.

The same is true of the Prompt Penalty Assessment Pathway, though for different reasons.  Article III and the Seventh Amendment attach to FERC's penalty-assessment proceeding and preclude FERC from "compel[ling]" American Efficient "to defend [itself] before the agency rather than before a jury in federal court."  *Jarkesy*, 603 U.S. at 115.  Under the Prompt Penalty Assessment Pathway, FERC "review[s] the full record" and—assuming it agrees with the Office of Enforcement, as it usually does—issues an order finding a violation and assessing penalties.  No jury is involved.  And the penalty order that FERC issues completes the agency adjudication and imposes direct legal consequences; assessed penalties, for example, must be paid to the United States within 60 days, from which point interest accrues.  *See Vitol*, 169 FERC ¶ 61,070, P 59; *ETRACOM*, 155 FERC ¶ 61,284, P 45 (2016); *Coaltrain Energy, L.P.*, 155 FERC

21

¶ 61,204 (2016); *Houlian Chen Powhatan Energy Fund*, 151 FERC ¶ 61,179, P 62,173 (2015); *City Power Mktg.*, 152 FERC ¶ 61,012, P 61,074 (2015). Only after that proceeding, if a respondent refuses to pay, FERC may choose to initiate a new proceeding in federal court to "affirm" the penalty assessment. 16 U.S.C. § 823b(d)(3); *cf. Powhatan*, 949 F.3d at 904-905 (explaining that the proceeding to affirm a penalty is a separate, second proceeding).

Thus, to secure any possible jury trial down the road, American Efficient would first be compelled to complete a costly adjudicative proceeding before FERC, without the benefit of a jury. When the inevitable penalty order is issued, American Efficient would need to choose to disobey the order's direction to pay civil penalties. American Efficient would then need to accept the risk of being penalized for not complying by having interest run from the date FERC demanded payment. And American Efficient, acting in defiance of a FERC penalty order, would be subject to a Sword of Damocles as it waits for FERC to bring a separate federal court action to affirm the penalty. Nothing about that scheme comports with Seventh Amendment, particularly because "every encroachment" upon the jury trial right "has been watched with great jealousy." *Jarkesy*, 603 U.S. at 122. The Seventh Amendment guarantees a jury trial before, not after, the government has imposed civil penalties on private parties.

22

## II.    The Remaining Equitable Factors Favor A Preliminary Injunction

Because American Efficient is virtually certain to prevail on its constitutional claims, the remaining requirements for preliminary relief—irreparable harm, the balance of equities, and the public interest—are readily satisfied. *See Leaders of a Beautiful Struggle*, 2 F.4th at 346 (quickly concluding that the remaining equitable factors are satisfied once a likely constitutional violation has been established).

### A.    Immediate Relief Is Needed To Prevent Further Irreparable Harm

To begin with, "[b]ecause there is a likely constitutional violation"—namely, FERC's unconstitutional in-house, juryless penalty proceeding—"the irreparable harm factor is satisfied." *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *accord Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[A] prospective violation of a constitutional right constitutes irreparable injury[.]"). Supreme Court precedent is clear that ongoing, unconstitutional agency processes inflict a "here-and-now injury" on private parties that is irreparable by definition: Once those agency actions "ha[ve] already happened[, they] cannot be undone." *Axon*, 598 U.S. at 191 (so holding, in the context of jurisdictional analysis); *see also Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) (denial of constitutional rights constitutes irreparable harm); *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022) ("Since the Court has determined that Plaintiff

23

was entitled under the Seventh Amendment to a jury trial [in an FDIC proceeding], the irreparable injury requirement is automatically satisfied without the need to consider plaintiff's particular showings of irreparable harm.").

But constitutional injuries are not the only irreparable harm that American Efficient will suffer. The combined effect of FERC's unconstitutional investigation and penalty-assessment proceeding will likely render American Efficient insolvent within two to six months and force it out of business absent preliminary relief. Clayton Decl. ¶¶ 9, 13. Under Fourth Circuit law, irreparable injury exists when a party "faces the threat" of even "temporary suspension" of its ability to run its business, as well as when it suffers "the loss of valuable business opportunities." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). This case easily exceeds that bar: Without a preliminary injunction against the OSC, American Efficient's operations will be irreparably destroyed because it will be rendered insolvent and will suffer permanent damage to its reputation, good will, and perceived creditworthiness. Clayton Decl. ¶¶ 9, 11, 13, 15-17.

To start, American Efficient faces a significant risk of insolvency absent immediate relief. American Efficient currently has less than one million dollars in cash on hand and incurs over half-a-million dollars each month to maintain business operations and defend itself against FERC's underlying allegations. Clayton Decl. ¶ 13.

24

Those substantial costs also come against the backdrop of collateral consequences from FERC's misguided investigation and penalty proceeding. PJM, for example, has withheld over $100 million of Affirmed Energy's cash collateral and bonus payments for resources that have already been approved and delivered. Clayton Decl. ¶ 10. These actions are directly related to FERC's ongoing proceedings. *Id*.

Based on PJM's retention of collateral, American Efficient's efforts to meet existing commitments and repay third-party creditors have been frustrated. Clayton Decl. ¶ 11. Already, American Efficient's principal lender has refused to advance further collateral, restricted access to American Efficient's capacity revenues, and significantly increased other costs and fees. *Id*. Based on these direct harms, American Efficient, after repeated efforts, has only been able to acquire short-term financing from one lender, in exchange for a secured interest in one of American Efficient's parent companies. *Id*. ¶ 12. If the FERC proceeding continues, American Efficient will likely become insolvent in two to six months. *Id*. ¶ 13.

Although financial harms are not always irreparable, the substantial injuries here are irreparable for two reasons. First, absent preliminary relief, as just explained, American Efficient will likely be rendered insolvent. Clayton Decl. ¶ 13. Where, as here, economic injuries "threaten[] the very existence of the movant's business,"

25

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), irreparable injury is satisfied. *Accord Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022) (irreparable injury supported because the challenged act "was likely to shut down Air Evac's membership program"); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 719 (4th Cir. 2021) ("[P]ermanent loss of a business … is a well-recognized form of irreparable injury.").

Second, "federal agencies generally enjoy sovereign immunity for any monetary damages," *Wage & Whites Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021), such that there is "no 'adequate compensatory or other corrective relief'" that could repair American Efficient's injuries through "the ordinary course of litigation," *In re NTE Connecticut, LLC*, 26 F.4th 980, 990 (D.C. Cir. 2022). Thus, even if American Efficient managed to survive, it could never recover money damages from the federal government for the harms it sustained.

What is more, FERC's actions have already forced American Efficient to eliminate the positions for the vast majority of its workforce and to cut salaries for all employees. Clayton Decl. ¶ 14. Without preliminary relief, American Efficient will soon be forced to lay off its remaining employees. *Id.* Those layoffs constitute additional

26

irreparable harm. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (loss or suspension of employees is irreparable harm).

Left unchecked, FERC's penalty proceeding will also irreparably damage American Efficient's business relationships, reputation, and goodwill. American Efficient is required to answer the OSC on March 17, after which FERC could issue a penalty order at any point. Assessment of a penalty would irreparably harm the perception of American Efficient's creditworthiness, which cannot be easily rebuilt after the fact. Clayton Decl. ¶ 15. And the ongoing agency proceeding may force American Efficient to default on its lending agreements, further injuring its reputation. *Id.* ¶ 16. In short, the penalty proceeding will all but destroy American Efficient's reputation, good will, and its business relationships within the industry. This, too, is irreparable injury. *See, e.g.*, *Laboratory Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 463 (M.D.N.C. 2015) ("the irreparable injury prong is satisfied" if the lack of a preliminary injunction "creates … the loss of goodwill").

Any one of the categories of irreparable injury discussed above is sufficient to satisfy the irreparable harm requirement. In combination, these constitutional and real-world injuries demonstrate irreparable injury many times over.

27

**B.     The Balance Of Equities Weighs In Favor Of Preliminary Relief**

FERC has no cognizable interest in violating the Constitution and thus would "in no way [be] harmed by issuance of a preliminary injunction which prevents [it] from" doing so. *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *accord Legend Night Club v. Miller*, 637 F.3d 291, 302-303 (4th Cir. 2011) (similar). On the other side of the ledger, as just explained, American Efficient faces substantial, if not existential, irreparable harm absent preliminary relief.

For similar reasons, a preliminary injunction is in the public interest. "[I]t is well-established that the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle*, 2 F.4th at 346; *see also Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) ("[U]pholding constitutional rights surely serves the public interest."). The public interest would thus be served by preliminarily enjoining FERC's unconstitutional penalty proceeding, preserving American Efficient's ability to fully adjudicate its constitutional claims.

28

## CONCLUSION

American Efficient respectfully requests that the Court enter a preliminary injunction setting aside the OSC, enjoining FERC's assessment of a penalty, and enjoining any further enforcement proceedings by FERC against American Efficient.[5]

This the 29th day of January, 2025.

Respectfully submitted,

/s/ *Mark A. Hiller*
Mark A. Hiller
N.C. Bar No. 50004
Robinson, Bradshaw &
    Hinson, P.A.
1450 Raleigh Road
Chapel Hill, NC 27517
Phone: (919) 328-8800
MHiller@robinsonbradshaw.com

---

[5]     The Court should waive any bond requirement or, in the alternative, set a nominal bond.  *See* Fed. R. Civ. P. 65(c); *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).  The constitutional rights at stake here along with American Efficient's "strong showing of entitlement to preliminary injunctive relief," counsels in favor of waiver.  *See Am. Dairy Queen Corp. v. YS&J Enters.*, 2014 WL 1327017, at *5 (E.D.N.C. Apr. 2, 2014). Furthermore, "[g]iven the lack of any monetary injury to [FERC], no bond [should] be required."  *Planned Parenthood of Cent. N.C. v. Cansler*, 804 F. Supp. 2d 482, 501 (M.D.N.C. 2011).

29

Cary B. Davis
N.C. Bar No. 36172
Robinson, Bradshaw &
    Hinson, P.A.
101 N. Tryon St, Suite 1900
Charlotte, NC 28246
Phone: (704) 377-2536
CDavis@robinsonbradshaw.com

Seth P. Waxman*
Kelly P. Dunbar*
Wilmer Cutler Pickering
    Hale and Dorr LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Phone: (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
kelly.dunbar@wilmerhale.com

Suedeen G. Kelly*
John N. Estes, III*
Jenner & Block LLP
1099 New York Avenue N.W.
Suite 900
Washington, DC 20001
Phone: (202) 639-6000
Fax: (202) 639-6066
SKelly@jenner.com
JEstes@jenner.com

*Attorneys for Plaintiff American
Efficient LLC and Affirmed
Energy LLC*

30

\*Local Rule 83.1(d) special
appearance forthcoming.

**CERTIFICATION OF WORD COUNT**

I hereby certify that this brief complies with Local Rule 7.3(d) and that this brief does not exceed 6,250 words.

/s/ *Mark A. Hiller*
Mark A. Hiller

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system and additionally, the foregoing will be served on the following by certified mail:

> Office of the Secretary
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

> Mark C. Christie
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

> Willie L. Phillips
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

> David Rosner
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

> Lindsay S. See
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

> Judy W. Chang
> Federal Energy Regulatory Commission
> 888 First Street NE
> Washington, D.C. 20426

U.S. Attorney's Office for the Middle District of North Carolina
Civil Process Clerk
101 S. Edgeworth Street
4th Floor
Greensboro, NC 27401

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530-0001

Respectfully submitted this 29th day of January, 2025.

/s/ Mark A. Hiller

Mark A. Hiller
N.C. Bar No. 50004
Robinson, Bradshaw & Hinson, P.A.
1450 Raleigh Road
Chapel Hill, NC 27517
Phone: (919) 328-8800
Fax: (919) 328-8791
mhiller@robinsonbradshaw.com

Cary B. Davis
N.C. Bar No. 36172
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
Phone: (704) 377-2536
cdavis@robinsonbradshaw.com

Seth P. Waxman[*]
Kelly P. Dunbar[*]
Wilmer Cutler Pickering
    Hale and Dorr LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Phone: (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com

kelly.dunbar@wilmerhale.com

Suedeen G. Kelly[*]
John N. Estes, III[*]
Jenner & Block LLP
1099 New York Avenue N.W.
    Suite 900
Washington, D.C. 20001
Phone: (202) 639-6000
skelly@jenner.com
jestes@jenner.com

*Attorneys for Plaintiffs American Efficient
LLC and Affirmed Energy LLC*

*Local Rule 83.1(d) special appearance
forthcoming.