# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMERICAN EFFICIENT LLC, et al.,   )
   )
       Plaintiffs,   )
      v.   )     No: 1:25-CV-00068-TDS-JEP
   )
FEDERAL ENERGY REGULATORY   )
COMMISSION, et al.,   )
   )
       Defendants.   )

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES..............................................................................................iii

INTRODUCTION ..................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ................................................................. 3

I.   The Federal Energy Regulatory Commission ............................................. 3

II.  The Federal Power Act ............................................................................... 4

     A.   The FPA's Anti-Manipulation Provision. ............................................ 5

     B.   The FPA's Procedural Pathways for Assessing Civil Penalties. ......... 7

III. The FERC OSC and Notice of Proposed Penalty Against American Efficient .......... 9

IV.  The Complaint and Motion for Preliminary Injunction ........................... 11

LEGAL STANDARD .............................................................................................. 12

ARGUMENT.......................................................................................................... 13

I.   Plaintiffs Cannot Show a Clear Likelihood of Success on the Merits Because the
     Court Lacks Subject-Matter Jurisdiction and the FPA Proceeding Complies with
     *Jarkesy*. .............................................................................................. 13

     A.   Plaintiffs Lack Standing and Their Claim Is Unripe......................... 14

     B.   The FPA Proceeding Complies with *Jarkesy*................................... 17

II.  Plaintiffs Fail to Establish Irreparable Harm.......................................... 19

     A.   The Presence of a Constitutional Challenge Does Not Establish Irreparable
          Harm. .......................................................................................... 19

     B.   Plaintiffs' Self-Described Financial Injuries Also Do Not Satisfy the
          Irreparable-Harm Element............................................................. 20

          1.   *Plaintiffs' Existing Injuries Are Untethered from the Challenged
               Conduct.* ............................................................................. 21

i

      2.   *Plaintiffs' Alleged Future Injuries Are Speculative.* ...................................22

III.  The Balance of the Equities and Public Interest Weigh Against an Injunction. ........23

CONCLUSION ...............................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*,
   121 F.4th 1314 (D.C. Cir. 2024) ................................................................... 20

*Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*,
   461 U.S. 375 (1983) .................................................................................... 3

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023). ........................................................................... 19, 20

*Benisek v. Lamone*,
   585 U.S. 155 (2018) (per curiam) .............................................................. 23

*Bowles v. Russell*,
   551 U.S. 205 (2007) ................................................................................... 18

*Consol. Coal Co. v. Disabled Miners*,
   442 F.2d 1261 (4th Cir. 1971) ................................................................... 13

*Covington v. North Carolina*,
   2015 WL 13806587 (M.D.N.C. Nov. 25, 2015) ......................................... 23

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
   952 F.2d 802 (4th Cir. 1992) ............................................................... 12, 22

*Doe v. Duling*,
   782 F.2d 1202 (4th Cir. 1986) ................................................................... 14

*FERC v. City Power Mktg., LLC*,
   199 F.Supp.3d 218 (D.D.C. 2016) ............................................................. 19

*FERC v. Coaltrain Energy, L.P.*,
   2018 WL 7892222 (S.D. Ohio Mar. 30, 2018) ....................................... 9, 19

*FERC v. Elec. Power Supply Ass'n ("EPSA")*,
   577 U.S. 260 (2016) ................................................................................. 3, 4

iii

*FERC v. Maxim Power Corp.*,
196 F.Supp.3d 181 (D. Mass. 2016) ................................................................... 9, 11, 18

*FERC v. Powhatan Energy Fund, LLC*,
345 F.Supp.3d 682 (E.D. Va. 2018) ................................................................................. 6

*FERC v. Powhatan Energy Fund, LLC*,
949 F.3d 891 (4th Cir. 2020) ................................................................................... *passim*

*FERC v. Vitol Inc.*,
2021 WL 6004339 (E.D. Cal. Dec. 20, 2021) ................................................................ 6

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
17 F.3d 691 (4th Cir. 1994) ................................................................................... 12, 20

*Hughes v. Talen Energy Mktg., LLC*,
578 U.S. 150 (2016) ..................................................................................................... 4, 5

*Hunter v. FERC*,
527 F.Supp.2d 9 (D.D.C. 2007) ........................................................................ 16, 21, 24

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) ........................................................................................ 21

*Kansas v. Becerra*,
__ F.Supp.3d __, 2025 WL 212358 (N.D. Iowa Jan. 16, 2025) ................................... 13

*Kim v. FINRA*,
698 F.Supp.3d 147 (D.D.C. 2023) .......................................................................... 23, 24

*Mahmoud v. McKnight*,
102 F.4th 191 (4th Cir. 2024) ...................................................................................... 12

*MicroStrategy Inc. v. Motorola, Inc.*,
245 F.3d 335 (4th Cir. 2001) ....................................................................................... 12

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ........................................................................................ 23

iv

*Nat'l Park Hosp. Ass'n v. DOI*,
    538 U.S. 803 (2003) ................................................................................... 15

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ................................................................................. 23

*Northgate Assocs., LLLP v. NY Credit Funding I, LLC*,
    2008 WL 3200630 (M.D.N.C. Aug. 5, 2008) ............................................ 22

*Perdue Farms Inc. v. Su*,
    2025 WL 338283 (E.D.N.C. Jan. 29, 2025) ....................................... 20, 24

*Pierce v. N.C. State Bd. of Elections*,
    97 F.4th 194 (4th Cir. 2024) ..................................................................... 23

*PPL EnergyPlus, LLC v. Nazarian*,
    753 F.3d 467 (4th Cir. 2014) ....................................................................... 5

*Pub. Utils. Comm'n v. Attleboro Steam & Elec. Co.*,
    273 U.S. 83 (1927) ...................................................................................... 3

*Real Truth About Obama, Inc. v. FEC*,
    575 F.3d 342 (4th Cir. 2009) ......................................................... 12, 13, 22

*Scotts Co. v. United Indus. Corp.*,
    315 F.3d 264 (4th Cir. 2002) ................................................................... 12

*SEC v. Jarkesy*,
    603 U.S. 109 (2024) ............................................................................ *passim*

*South Carolina v. United States*,
    912 F.3d 720 (4th Cir. 2019) ......................................................... 14, 15, 17

*Total Gas & Power N. Am., Inc. v. FERC*,
    2016 WL 3855865 (S.D. Tex. July 15, 2016) ........................................... 17

*Trump v. New York*,
    592 U.S. 125 (2020) ................................................................................. 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................... 14

*Williams v. Williams*,
   2021 WL 1341820 (M.D.N.C. Apr. 9, 2021) ..................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................. 12, 13, 23

*Wis. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) .......................................................... 21

**Statutes**

Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 ..................... 6, 7

Federal Power Act, 16 U.S.C. § 791a, *et seq.* ...........................................*passim*

16 U.S.C. § 823b ...................................................................................*passim*

16 U.S.C. § 824 ........................................................................................ 4, 5

16 U.S.C. § 824d ........................................................................................... 4

16 U.S.C. § 824e ........................................................................................... 4

16 U.S.C. § 824v ........................................................................................... 6

16 U.S.C. § 825*o*-1 ...................................................................................... 6, 7

42 U.S.C. § 7134 ........................................................................................... 3

42 U.S.C. § 7171 ........................................................................................ 3, 4

42 U.S.C. § 7172 ........................................................................................... 4

Fed. R. Civ. P. 38 ....................................................................................... 18

Fed. R. Civ. P. 72 ....................................................................................... 19

**Regulations**

18 C.F.R. § 1c.2 (2006) ................................................................ 6

18 C.F.R. § 385.213 (2012) ........................................................... 8

18 C.F.R. § 385.2201 (2012) ...................................................... 7, 8

18 C.F.R. § 385.2202 (2008) ......................................................... 8

**Other Authorities**

U.S. Const. amend. VII ............................................................ 2, 11

U.S. Const. art. II .................................................................. 11

U.S. Const. art. III ........................................................... 2, 11, 14

*Enforcement of Statutes, Regulations and Orders*,
    123 FERC ¶ 61,156, 2008 WL 2067393 (May 15, 2008) ..................... 7

*CAlifornians for Renewable Energy, Inc. v. Cal. Pub. Utils. Comm'n*,
    119 FERC ¶ 61058, 2007 WL 1155627 (Apr. 19, 2007) ..................... 6

*Amaranth Advisors L.L.C.*,
    120 FERC ¶ 61,085, 2007 WL 2153253 (July 26, 2007) .................... 16

*Amaranth Advisors L.L.C.*,
    128 FERC ¶ 61,154, 2009 WL 2457001 (Aug. 12, 2009) .................... 16

*Footprint Power LLC*,
    163 FERC ¶ 61,198, 2018 WL 3049220 (June 18, 2018) .................... 15

*Footprint Power LLC*,
    166 FERC ¶ 61,150, 2019 WL 927238 (Feb. 25, 2019) ..................... 16

*Vitol Inc.*,
    169 FERC ¶ 61,070, 2019 WL 5491976 (Oct. 25, 2019) .................... 16

## INTRODUCTION

On December 16, 2024, the Federal Energy Regulatory Commission ("FERC" or "Commission") issued an Order to Show Cause and Notice of Proposed Penalty against American Efficient LLC and its affiliates ("American Efficient"). 189 FERC ¶ 61,196 (**Ex. 1**, "OSC"). The OSC directs American Efficient to respond to allegations by FERC's Office of Enforcement ("Enforcement staff") that American Efficient violated the Federal Power Act ("FPA") by defrauding consumers in regional electric power markets of hundreds of millions of dollars via a purported energy-efficiency product that did not provide consumers any real energy efficiency, demand reduction, or reliability benefits. *See* OSC App'x A, Enforcement Staff Report and Recommendation, at 2–3 ("Staff Report").

The FPA provides two pathways for American Efficient to contest the OSC. Under the pathway American Efficient chose, it will answer the allegations on March 17; FERC's Office of Enforcement may reply on April 16; briefing and evidence will be submitted to neutral agency decisionmakers; and, upon their review, FERC will decide whether any penalty is appropriate, and if so, the amount. Perhaps no penalty will be assessed, or it will be less than proposed. If a penalty is assessed, but American Efficient does not pay, FERC must sue in federal district court. The district court will review de novo all facts and evidence, governed by the Federal Rules of Civil Procedure, and with a right to trial by jury. 16 U.S.C. § 823b(d)(3)(B).

Relying on *SEC v. Jarkesy*, 603 U.S. 109 (2024), Plaintiffs seek a preliminary injunction on the premise that the OSC violates Article III and the Seventh Amendment. Plaintiffs' Motion should be denied for three reasons. *First*, because the OSC does not assess any penalty, Plaintiffs cannot establish standing and ripeness. *Second*, Plaintiffs are unlikely to succeed on the merits because FERC's proceeding does not "compel" American Efficient to defend itself before the Commission in lieu of an Article III judge and jury; therefore, the proceeding complies with *Jarkesy*. *Id.* at 115. And contrary to Plaintiffs' argument, an Article III adjudication need not be first-in-time to satisfy the Constitution.

*Third*, Plaintiffs cannot demonstrate irreparable harm or that the equities and public interest favor an injunction. Plaintiffs' claimed financial difficulties are not "irreparable," and in any event, primarily result from the actions of third-party PJM Interconnection, L.L.C. ("PJM"), which an injunction against FERC would not redress. Moreover, any alleged future financial injury from a hypothetical penalty—that would only be enforceable if directed by an Article III federal judge or jury, under Plaintiffs' selected statutory pathway—is neither actual nor imminent. Finally, the equities and public interest are served by allowing FERC, as a decisional body, to determine whether to accept, modify, or reject Enforcement staff's recommended penalty before an action is brought in district court, as Congress prescribed.

<u>**RELEVANT FACTUAL BACKGROUND**</u>

Plaintiffs' contention that they did not commit the alleged misconduct, *see* Clayton

Decl. (ECF 4); Memo. ISO Mot. (ECF 3) at 10–11 ("Mot."), is not before the Court.

FERC provides only the background relevant to Plaintiffs' request for preliminary

injunctive relief.

**I.      The Federal Energy Regulatory Commission**

Until the early 20th century, State and local agencies oversaw "nearly all"

generation, transmission, and distribution of electricity.  *FERC v. Elec. Power Supply*

*Ass'n ("EPSA")*, 577 U.S. 260, 265–66 (2016).  In 1927, the Supreme Court held that the

Commerce Clause bars States from regulating certain interstate electricity transactions,

including wholesale sales across state lines, *Pub. Utils. Comm'n v. Attleboro Steam &*

*Elec. Co.*, 273 U.S. 83, 89–90 (1927), thereby creating "a regulatory void," fillable only

by Congress, *EPSA*, 577 U.S. at 266.

After *Attleboro*, Congress "undertook to establish federal regulation over most of

the wholesale transactions of electric and gas utilities engaged in interstate commerce."

*Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n*, 461 U.S. 375, 378 (1983).  Congress

created FERC's predecessor, the Federal Power Commission ("FPC"), and enacted the

Federal Power Act of 1935 and Natural Gas Act of 1938 ("NGA") for it to administer.

*See id.* at 378–79.  Later, Congress passed the Department of Energy Organization Act of

1977, which replaced the FPC with FERC.  *See* 42 U.S.C. §§ 7134, 7171(a).

3

Although housed within the Department of Energy, FERC has always been an independent agency, composed of five members appointed by the President with the Senate's advice and consent. *Id.* § 7171(a), (b); *see id.* § 7172(g); *Offices*, FERC, https://www.ferc.gov/offices (last visited Mar. 3, 2025) (FERC organizational chart). FERC's mission is to "assist consumers in obtaining reliable, safe, secure, and economically efficient energy services at a reasonable cost through appropriate regulatory and market means and collaborative efforts." *About FERC*, FERC (Feb. 12, 2024), https://www.ferc.gov/media/about-ferc. FERC's Office of Enforcement investigates possible violations of FERC-administered statutes and FERC rules and regulations. *Office of Enforcement*, FERC, https://www.ferc.gov/office-enforcement-oe (last visited Mar. 3, 2025).

## II. The Federal Power Act

The FPA is one of FERC's primary statutory authorities and charges FERC with regulating "'the sale of electric energy at wholesale in interstate commerce,' including both wholesale electricity rates and any rule or practice 'affecting' such rates." *EPSA*, 577 U.S. at 264–65 (quoting 16 U.S.C. §§ 824(b), 824e(a)). *See generally* Federal Power Act, 16 U.S.C. § 791a, *et seq.* FERC must ensure that all "rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy" are "just and reasonable." 16 U.S.C. § 824d(a). To that end, FERC oversees regional wholesale electricity markets operated by regional grid operators. *See EPSA*, 577 U.S. at 267–68; *Hughes v. Talen Energy Mktg., LLC*, 578 U.S.

4

150, 155 (2016).  As relevant here, there are two types of wholesale markets: energy and capacity.  The energy market is "a real-time market that enables [operators] to buy and sell electricity to distributors."  *PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467, 472 (4th Cir. 2014), *aff'd sub nom. Hughes v. Talen Energy Mktg. LLC*, 578 U.S. 150 (2016). The capacity market "gives buyers the option to purchase electricity in the future."  *Id.*

Plaintiffs participate in these wholesale electric markets, Clayton Decl. ¶ 2, making their conduct subject to the FPA.  *See, e.g.*, Compl. (ECF 1) ¶ 21 & n.1.

A. The FPA's Anti-Manipulation Provision.

FERC is statutorily obligated to "safeguard[] the integrity of our nation's interstate energy markets."  *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 894 (4th Cir. 2020); 16 U.S.C. § 824(a) (FPA's "Declaration of Policy," declaring that transmitting and selling electric energy is "affected with a public interest," and that Federal regulation is "necessary in the public interest").  In particular, "[g]iven the tangible harms visited on consumers by fraudulent conduct in the energy markets," Congress determined that FERC "must have the tools to act when markets fail, and it must use those tools to ensure that customers pay only just and reasonable rates."  *Powhatan*, 949 F.3d at 904 (quotations omitted).  Congress structured the FPA "to afford FERC latitude in determining whether the statute's highly technical rules have been violated and, in the event of a violation, in assessing a penalty reflective of the harms that market manipulation visits on consumers."  *Id.* at 900.

5

In 2000, what became known as the "Western Energy Crisis" tested FERC's ability to fulfill this duty. *See FERC v. Vitol Inc.*, 2021 WL 6004339, at *16 (E.D. Cal. Dec. 20, 2021), *aff'd*, 79 F.4th 1059 (9th Cir. 2023). The Crisis was precipitated by, *inter alia*, "abuses and manipulation by traders, spikes in energy prices, power outages, bankruptcies, and extensive litigation." *Id.*; *see also FERC v. Powhatan Energy Fund, LLC*, 345 F.Supp.3d 682, 688 n.9 (E.D. Va. 2018), *aff'd & remanded*, 949 F.3d 891 (4th Cir. 2020). FERC's response to the Crisis was "limited by the minimal enforcement authority it possessed at the time." *CAlifornians for Renewable Energy, Inc. v. Cal. Pub. Utils. Comm'n*, 119 FERC ¶ 61058, P[1] 32, 2007 WL 1155627, at *7 (Apr. 19, 2007). After the Crisis, Congress passed the Energy Policy Act of 2005 ("EPAct 2005"), giving the Commission authority to assess greatly increased civil penalties to deter market manipulation under the FPA. Pub. L. No. 109-58, 119 Stat. 594.

EPAct 2005 prohibits entities subject to the FPA from using "any manipulative or deceptive device or contrivance . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of electric ratepayers." 16 U.S.C. § 824v(a) (the "Anti-Manipulation Provision"). FERC may assess penalties of up to an inflation-adjusted $1,000,000 per violation per day for violations. *Id.* § 825*o*-1(b); 18 C.F.R. § 1c.2 (2006) (FERC rule implementing Anti-Manipulation Provision).

---

[1] "P" indicates the internal paragraph number in a FERC order.

Since EPAct 2005, FERC Enforcement staff have investigated and sought remedies for market manipulation and other serious energy market misconduct. *E.g.*, *FERC Issues Fiscal 2024 Enforcement Report*, FERC (Nov. 21, 2024), https://www.ferc.gov/news-events/news/ferc-issues-fiscal-2024-enforcement-report.

B.  The FPA's Procedural Pathways for Assessing Civil Penalties.

In addition to authorizing civil penalties, the FPA outlines what happens when an entity subject to the FPA is alleged to have violated it. "Before issuing an order assessing a civil penalty against any person under this section, the Commission shall provide to such person notice of the proposed penalty" by issuing an OSC. 16 U.S.C. § 823b(d)(1); *see id.* § 825*o*-1(b). Generally, an OSC describes the alleged violation(s), attaches the Enforcement staff's report, and directs the respondent to demonstrate why the Commission should not assess the proposed penalty. *Enforcement of Statutes, Regulations and Orders*, 123 FERC ¶ 61,156, PP 35–36, 2008 WL 2067393, at *9 (May 15, 2008). OSCs do not contain "any findings" regarding whether penalties are, in fact, warranted. *Id.* P 36. Instead, an OSC initiates a "[c]ontested on-the-record proceeding." 18 C.F.R. § 385.2201(c)(1)(i) (2012); *Powhatan*, 949 F.3d at 895 (purpose of on-the-record proceeding is to determine "*whether* the OSC's *proposed* civil penalties *should* in fact be assessed" (emphases added)). Once an OSC is issued, Enforcement staff working on the investigation are prohibited from conducting off-the-record communications about the investigation with any Commissioner or decisional staff working for the

7

Commission—thus separating investigative and decisional functions within the Agency. 18 C.F.R. §§ 385.2201, 385.2202.

The FPA, 16 U.S.C. § 823b(d)(1)–(3), allows respondents to choose the process by which the Commission determines whether a penalty should be "assessed." *See Powhatan*, 949 F.3d at 894–95 (describing two options).

*The Administrative Option.* The first option is an agency hearing conducted by a FERC administrative law judge, followed by Commission issuance of an order assessing—or not assessing—a penalty. § 823b(d)(2)(A). The respondent may seek direct review of a penalty order in the appropriate U.S. court of appeals. § 823b(d)(2)(B).

*The District Court Option.* Alternatively, under § 823b(d)(3), the respondent may elect an adversarial proceeding, which begins with the opportunity to answer the OSC's allegations, including with evidence. 18 C.F.R. § 385.213(c) (2012). When briefing is complete, the Commission considers (1) Enforcement staff's report recommending penalties, (2) respondent's answer to the report (including supporting evidence), and (3) Enforcement staff's reply. *Id.* § 385.213(a)–(c); **Ex. 1**, OSC P 1. If the Commission decides, acting as a "neutral decisionmaker[]," that further action is warranted, it must "promptly assess [a] penalty, by order." *Powhatan*, 949 F.3d at 902; 16 U.S.C. § 823b(d)(3)(A). Notably, in 10 of 27 OSC proceedings dating back to 2005, the Commission has departed materially from Enforcement staff's proposed penalty— including by deciding not to assess any penalty at all. *Orders to Show Cause*

8

*Proceedings*, FERC, https://www.ferc.gov/orders-show-cause-proceedings# (last updated Feb. 11, 2025).

*If* the Commission decides to assess penalties, its assessment is not the final step: if the respondent does not pay the penalty within 60 days, the Commission "shall" file a district court action. 16 U.S.C. § 823b(d)(3)(B). The district court "shall" have authority to "review de novo the law and the facts involved," and "shall" have jurisdiction to "enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in Part, such assessment." *Id.* Such de novo review is treated "as an ordinary civil action governed by the Federal Rules of Civil Procedure that culminates, if necessary, in a jury trial." *FERC v. Maxim Power Corp.*, 196 F.Supp.3d 181, 197 (D. Mass. 2016); *see also FERC v. Coaltrain Energy, L.P.*, 2018 WL 7892222, at *3 (S.D. Ohio Mar. 30, 2018) (district court's de novo review proceeds "like any other civil lawsuit"). This statutorily prescribed pathway "ensur[es] that FERC has enough time to thoroughly vet each alleged instance of market manipulation before filing suit"—a process that "can be, in actuality, of benefit to the regulated party." *Powhatan*, 949 F.3d at 901.

## III.  The FERC OSC and Notice of Proposed Penalty Against American Efficient

American Efficient participates in wholesale electric capacity markets managed by regional grid operators; PJM is American Efficient's "primary" market. Clayton Decl. ¶¶ 4, 6. In 2024, FERC approved PJM's removal of energy efficiency resources from its capacity market, beginning in summer 2025. *Id.* ¶ 7. Therefore, American Efficient's

9

current business is "focused on meeting its existing commitments . . . and satisfying its obligations to third-party creditors." *Id.*

FERC's Office of Enforcement began its three-and-a-half-year investigation into American Efficient in 2021. **Ex. 1**, Staff Report at 2–3. At the conclusion of the investigation, Enforcement staff recommended that the Commission issue an order requiring American Efficient to show cause (1) why it did not violate the FPA's Anti-Manipulation Provision, FERC's Anti-Manipulation Rule, and tariffs (Commission-approved operating rules) of two regional power grids; and (2) why it should not pay a civil penalty to the U.S. Treasury and disgorge unjust profits for the benefit of ratepayers. *E.g.*, *id.* at 4–5, 151.

On December 16, 2024, the Commission issued the OSC, citing Enforcement staff's allegations that American Efficient had violated the FPA and tariff requirements through a manipulative scheme that extracted hundreds of millions of dollars in capacity payments for a putative energy efficiency project that did not actually reduce energy use. *Id.*, OSC PP 1–3. The OSC did not "indicate Commission adoption or endorsement of the Enforcement Staff Report." *Id.* P 2. But it did direct American Efficient to file an answer within 30 days and stated that Enforcement staff may reply within 30 days of an answer. *Id.* at pp.4–6 (PP (A), (B), (D), (E), (G)). Moreover, the Staff Report accompanying the Order invited American Efficient to submit information about its ability to pay the proposed penalty, which could inform the size of any future penalty (should FERC decide to assess one). *Id.*, Staff Report at 150.

On January 15, 2025, American Efficient elected the District Court Option under 16 U.S.C. § 823b(d)(3).  **Ex. 2**.  American Efficient also requested, and received, a 60-day extension of its answer deadline, from January 15 to March 17, 2025.  **Ex. 3**; Mot. at 11.  Enforcement Staff's reply is due April 16.  **Ex. 1**, OSC at p.6 (P (G)).  At that point, FERC's Commissioners will determine whether to assess any penalty against American Efficient, and if so, the amount.  *Powhatan*, 949 F.3d at 902.  *If* FERC decides to assess any penalty against American Efficient, and *if* American Efficient chooses not to pay such penalty within 60 calendar days, then it is statutorily guaranteed a district court's de novo review, with the right to a jury trial.  16 U.S.C. § 823b(d)(3)(B); *Maxim Power*, 196 F.Supp.3d at 197.

## IV.    The Complaint and Motion for Preliminary Injunction

On January 29, 2025, roughly six weeks after the OSC issued, Plaintiffs filed this suit and moved for a preliminary injunction.  Plaintiffs allege that FERC's proceeding violates the Seventh Amendment and Article III, and that the investigation and OSC violate Article II.  Compl. ¶¶ 2, 4.  Plaintiffs' Seventh Amendment/Article III claim (Count I) derives from *SEC v. Jarkesy*, 603 U.S. 109 (2024) ("*Jarkesy* claim").  Compl. ¶¶ 2, 4, 46–67.  Their Article II claim (Count II) is premised on their allegation that FERC is "improper[ly] insulat[ed]" from presidential oversight because Commissioners can only be removed by the President for cause.  *Id.* ¶¶ 2, 5–6, 68–111.  Although the Complaint purports to seek preliminary injunctive relief related to the Article II claim (*e.g.*, Compl. at p.49 ¶¶ d, e), Plaintiffs' Motion is limited to their *Jarkesy* claim.

11

## LEGAL STANDARD

Whether to grant interim injunctive relief is within the Court's "sound discretion." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). However, "[g]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) (cleaned up). Accordingly, "[f]ederal decisions have uniformly characterized the grant of interim relief as an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992) (quotations omitted); *accord MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).

Thus, a plaintiff must establish that: (1) he is "likely to succeed on the merits"; (2) he is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities tips in his favor"; and (4) an injunction is "in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089 (2010); *Williams v. Williams*, 2021 WL 1341820, at *2 (M.D.N.C. Apr. 9, 2021) (Schroeder, J.). The movant's burden is "exceedingly high." *Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024), *cert. granted sub. nom Mahmoud v. Taylor*, -- S. Ct. --, 2025 WL 226842 (Jan. 17, 2025)

12

(Mem.). Further, "[w]henever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends." *Consol. Coal Co. v. Disabled Miners*, 442 F.2d 1261, 1267 (4th Cir. 1971).

## ARGUMENT

Plaintiffs' Motion seeks to (1) set aside the OSC (which imposes no penalty), (2) enjoin FERC's assessment of a penalty (which has not happened, and might not), and (3) enjoin any "further" FERC enforcement proceedings against American Efficient (the very proceedings that, here, would culminate in a de novo trial in an Article III court). Mot. at 29. To prevail, Plaintiffs must demonstrate that they are likely to succeed on the merits of their *Jarkesy* claim; that they will suffer "irreparable" harm absent preliminary relief; and that the equities and public interest favor an injunction. *Winter*, 555 U.S. at 20.[2] Plaintiffs must prove all four requirements. *Real Truth*, 575 F.3d at 346. They cannot prove even one. The Motion should be denied.

I. **Plaintiffs Cannot Show a Clear Likelihood of Success on the Merits Because the Court Lacks Subject-Matter Jurisdiction and the FPA Proceeding Complies with *Jarkesy*.**

"Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a clear showing that . . . it is likely to succeed on the merits at trial." *Real Truth*, 575 F.3d at 345 (quotations omitted). Plaintiffs cannot make that showing for the

---

[2] Plaintiffs do not address the likelihood of success on the merits of their Article II claim. Therefore, they are not entitled to preliminary relief on that claim. *E.g.*, *Kansas v. Becerra*, __ F.Supp.3d __, 2025 WL 212358, at *9 (N.D. Iowa Jan. 16, 2025).

13

threshold reason that the Court lacks subject-matter jurisdiction. Even if there were

jurisdiction, Plaintiffs still cannot prove likely success on the merits, because the FPA's

District Court Option complies with *Jarkesy*—the sole authority on which Plaintiffs rely.

Mot. at 12–22.

A. Plaintiffs Lack Standing and Their Claim Is Unripe.

"Federal courts are principally deciders of disputes, not oracular authorities. We

address particular cases or controversies and may not arbitrate abstract differences of

opinion." *Doe v. Duling*, 782 F.2d 1202, 1205 (4th Cir. 1986) (quotations and citation

omitted). This requirement stems from Article III and presents both jurisdictional and

prudential limits on the exercise of federal judicial power. *Warth v. Seldin*, 422 U.S. 490,

498 (1975). "[T]here is an obvious overlap between the doctrines of standing and

ripeness." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (quotations

omitted). Both derive from the Constitution's limitation on courts' power to adjudicate

"cases and controversies." *Id.* at 726, 730. And both hold that a plaintiff cannot establish

jurisdiction based on an alleged injury that lies at the end of a "highly attenuated chain of

possibilities." *Id.* at 730 (quotations omitted) (re: standing); *id.* (a plaintiff's claim is not

ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed

may not occur at all" (quotations omitted)); *accord Trump v. New York*, 592 U.S. 125,

131 (2020).

To establish Article III standing, a plaintiff must show that: (1) it has suffered an

"injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent," not

14

conjectural or hypothetical; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely," as opposed to "merely speculative," that the injury "will be redressed by a favorable decision." *South Carolina*, 912 F.3d at 726 (quotations omitted). Similarly, whether a claim is ripe turns on "the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Id.* at 730 (quotations omitted). Where, as here, the claim challenges agency action, the ripeness requirement "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 807 (2003) (quotations omitted).

Plaintiffs cannot show an "actual or imminent" concrete injury, and their claim is not ripe, because the core "injury" they allege—assessment of a civil penalty prior to trial in district court—rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *South Carolina*, 912 F.3d at 730; *see* Clayton Decl. ¶¶ 15–18. Plaintiffs are wrong to assert that a civil penalty is "inevitable." Mot. at 22; *see also id.* at 21 (speculating that Commissioners "usually" agree with FERC Enforcement staff's evaluation). In fact, the Commission frequently departs from Enforcement staff's recommendations, doing so in nearly 40% of the OSC proceedings presented for its review. *See supra* at 8. In some cases, FERC has declined to assess any penalty at all. *Compare, e.g.*, *Footprint Power LLC*, 163 FERC ¶ 61,198, PP 2–4, 2018 WL 3049220, at *1–2 (June 18, 2018) (Enforcement staff proposed $4.2 million civil penalty and ~$2 million in disgorgement), *with* 166 FERC ¶ 61,150, PP 5–6, 10, 2019

15

WL 927238, at *2–3 (Feb. 25, 2019) (determining that no penalty should be assessed).  In others, the Commission assessed a lesser penalty.  *Vitol Inc*., 169 FERC ¶ 61,070, PP 1, 12, 2019 WL 5491976, at *2, *5 (Oct. 25, 2019) (Enforcement staff proposed $6 million civil penalty; FERC assessed ~$1.5 million penalty).  FERC has also approved pre-penalty settlements significantly below what Enforcement staff proposed.  *Compare, e.g.*, *Amaranth Advisors L.L.C.*, 120 FERC ¶ 61,085, P 8, 2007 WL 2153253, at *3 (July 26, 2007) (OSC proposing $200 million civil penalty), *with* 128 FERC ¶ 61,154, P 2, 2009 WL 2457001, at *1 (Aug. 12, 2009) (recognizing that Amaranth's assets were "substantially diminished," and approving settlement with $7.5 million civil penalty).

These examples highlight why Plaintiffs' alleged injuries are speculative.  The Commission may assess no penalty against American Efficient, or a settlement may be reached prior to assessment of any penalty.  Indeed, the OSC expressly invited American Efficient to submit information about its ability to pay the proposed penalty, which could inform the size of any future penalty (should FERC decide to assess one).  **Ex. 1**, Staff Report at 150.  Because a civil penalty is speculative, American Efficient lacks both standing and a ripe claim.  *Accord, e.g.*, *Hunter v. FERC*, 527 F.Supp.2d 9, 17 (D.D.C. 2007) (preliminary injunction unwarranted because "issuance of an OSC does not have any binding legal effect on [plaintiff]'s ability to operate his business on a day-to-day basis," and an "OSC is not a final agency action that warrants judicial review at this time"); *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *9–10 (S.D.

16

Tex. July 15, 2016) (dismissing Seventh Amendment claim, and all other claims, as unripe), *aff'd*, 859 F.3d 325 (5th Cir. 2017).[3]

    B.  <u>The FPA Proceeding Complies with *Jarkesy*</u>.

    Even if there were jurisdiction, Plaintiffs will not succeed on the merits because the FPA proceeding complies with *Jarkesy*.[4] *Jarkesy* addressed the constitutionality of Securities and Exchange Commission ("SEC") enforcement proceedings involving alleged violations of securities laws. 603 U.S. at 115–16, 118–20. By its governing statute, the SEC could choose to bring an enforcement action either in-house or in district court. *Id.* at 116. Under the in-house option, the SEC would preside and find facts, governed by its rules, with judicial review available but "deferential." *Id.* at 117. Under the court option, a jury would find facts and an Article III judge would preside, "governed by the Federal Rules of Evidence and the ordinary rules of discovery." *Id.* In *Jarkesy*, the SEC chose to pursue civil penalties under the in-house option. *Id.* at 115. The Supreme Court granted certiorari to address "whether the Seventh Amendment permits the SEC to compel respondents to defend themselves before the agency rather

---

[3] If Plaintiffs assert standing based on alleged ongoing injuries, their argument fails because those injuries were caused by a third party—PJM—in June 2023. Clayton Decl. ¶¶ 10–14; *see infra* at 21–22. Even if there were evidence that such injuries by PJM are "fairly traceable" to FERC's proceeding—and there is not—Plaintiffs cannot show that those injuries would be redressed by a favorable decision against FERC. *South Carolina*, 912 F.3d at 726.

[4] For purposes of this Motion only, FERC will assume that its claims against American Efficient implicate *Jarkesy*. *See* Mot. at 12–20.

than before a jury in federal court." *Id.* The Court held that it does not, and that defendant Jarkesy was "entitled to a jury trial in an Article III court." *Id.* at 140.

Here, unlike in *Jarkesy*, the Commission has not "compelled" American Efficient to defend itself in any particular forum—the FPA leaves that decision to the respondent. 16 U.S.C. § 823b(d)(2), b(d)(3). Here, unlike in *Jarkesy*, one of the available pathways—which American Efficient chose—is a district court proceeding. *Id.* § 823b(d)(3). Here, unlike in *Jarkesy*, Article III judicial review in the selected forum is unconstrained. *Id.*; *Maxim Power*, 196 F.Supp.3d at 197. Therefore, Plaintiffs have secured the rights to which the Supreme Court held Jarkesy was entitled.[5]

Plaintiffs' only rejoinder is that "[t]he Seventh Amendment guarantees a jury trial **before**, not after, the government has imposed civil penalties on private parties." Mot. at 22 (emphasis added). But there is no basis for Plaintiffs' position, in *Jarkesy* or anywhere else. To the contrary, the Supreme Court has explained that "Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007). Congress has decided that federal courts have jurisdiction to consider challenges to the Commission's assessment of a civil penalty under the FPA. Congress has further

---

[5] To the extent they challenge the constitutionality of the Administrative Option (Mot. at 20–21) (which they do not have standing to do), Plaintiffs ignore that failure to elect the District Court option necessarily involves a knowing, voluntary waiver of any Seventh Amendment/Article III rights. *See* Fed. R. Civ. P. 38.

18

decided that such review comes *after*, not before, the initial Commission determination. The Commission is, accordingly, proceeding in the order directed by Congress.[6]

Under the District Court Option, if a penalty is assessed and the case proceeds to federal court, Plaintiffs can move to dismiss, arguing that FERC's proceedings are unconstitutional—as others have done. *See, e.g.*, *Coaltrain Energy, L.P.*, 2018 WL 7892222, at *16–17; *FERC v. City Power Mktg., LLC*, 199 F.Supp.3d 218, 238–39 (D.D.C. 2016). The Constitution requires no more.

## II. Plaintiffs Fail to Establish Irreparable Harm.

Plaintiffs allege three irreparable harms. *First*, Plaintiffs argue that the alleged constitutional violation is a "here-and-now" injury and therefore "by definition" irreparable. Mot. at 23–24. *Second*, Plaintiffs argue that they are in financial distress because of negative trickle-down effects due to third-party PJM's withholding of capital from American Efficient since June 2023, allegedly due to FERC's investigation. *Id.* at 25. *Third*, Plaintiffs theorize future irreparable harm, including insolvency, if FERC assesses a civil penalty. *Id.* at 27. All three arguments fail.

### A. The Presence of a Constitutional Challenge Does Not Establish Irreparable Harm.

As a threshold matter, litigants do not establish irreparable harm simply by alleging a constitutional violation. Plaintiffs' theory that *Axon* renders every

---

[6] Similar pre-adjudications are commonplace. For example, Magistrate Judges may adjudicate dispositive motions in any civil case, including cases with a jury trial right, subject to de novo review by an Article III judge. Fed. R. Civ. P. 72.

constitutional harm an irreparable harm misreads the decision. In *Axon*, the Supreme Court held that the district court had jurisdiction to review plaintiffs' constitutional challenges to the structure of the SEC and Federal Trade Commission under the Appointments Clause, because their structural challenges represented "here-and-now" injuries. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180, 191 (2023). However, *Axon* "did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction." *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1319, 1336 (D.C. Cir. 2024) (party failed to show irreparable harm from "participating in [an] expedited [regulatory] proceeding"), *petition for cert. filed*, No. 24-904 (U.S. Feb. 24, 2025); *cf. Perdue Farms Inc. v. Su*, 2025 WL 338283, at *2 (E.D.N.C. Jan. 29, 2025).[7]

B. Plaintiffs' Self-Described Financial Injuries Also Do Not Satisfy the Irreparable-Harm Element.

According to Plaintiffs, FERC's investigation and the OSC "have already inflicted substantial economic, reputational, and other injuries." Clayton Decl. ¶ 9; *see id.* ¶¶ 10–14. Plaintiffs also claim future harms, including insolvency, if FERC ultimately assesses a penalty. *Id.* ¶¶ 15–18. But monetary damages generally do not constitute "irreparable" harm, and even if they did here, Plaintiffs' stated injuries do not entitle them to early injunctive relief. *See InterDigital*, 17 F.3d at 694 ("Mere injuries, however substantial, in

---

[7] If Plaintiffs argue they have demonstrated irreparable harm because they established a clear likelihood of success on the merits of their *Jarkesy* claim, that argument fails for the reasons discussed in Argument § I.A *supra*. *See* Mot. at 23.

terms of money, time and energy necessarily expended in the absence of a stay, are not enough [to show irreparable harm]." (quotations omitted)).

>    1. *Plaintiffs' Existing Injuries Are Untethered from the Challenged Conduct.*

To prove irreparable harm, Plaintiffs must show that "the alleged harm will *directly result* from the action which [they] seek[] to enjoin." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (emphasis added). Put differently, "[t]he preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "Thus, where the threat is to the very existence of the plaintiff's business, it must still occur as a *direct result* of the action the movant seeks to enjoin." *Hunter*, 527 F.Supp.2d at 14–15.

Plaintiffs' CEO makes a critical admission: American Efficient's existing financial problems derive from the conduct of a third-party (PJM) that pre-dates FERC's OSC. Namely, Plaintiffs allege ongoing harm because: (1) PJM has withheld over $100 million in collateral and bonus payments since June 2023; (2) consequently, American Efficient has been unable to secure sufficient financing and will "face insolvency within two to six months"; and (3) American Efficient has had to reduce its workforce. Clayton Decl. ¶¶ 10–14; *see also* Mot. at 25.

There is no evidence that any of these harms result "directly" from what Plaintiffs seek to enjoin here: FERC's OSC and a Commission proceeding under the FPA, the outcome of which is speculative. Mot. at 29. Indeed, Plaintiffs admit that PJM decided

21

to withhold collateral and bonus payments 18 months *before* FERC's OSC issued.

Clayton Decl. ¶ 10. American Efficient has even filed a separate complaint with FERC

concerning the withheld collateral, claiming "irreparable" and "existential" injury

"resulting from PJM's actions." *See* Complaint, FERC Dkt. No. EL24-124 at 1, 3 (filed

July 3, 2024) (**Ex. 4**); *id.*, Ex. B (Clayton Decl.) ¶¶ 8–10. Plaintiffs do not, and cannot

here, request an injunction against *FERC* ordering *PJM* to return collateral or bonus

payments.[8]

### 2. *Plaintiffs' Alleged Future Injuries Are Speculative.*

To justify an injunction, the alleged irreparable harm must be "actual and

imminent." *Direx*, 952 F.2d at 812 (quotations omitted); *Northgate Assocs., LLLP v. NY

Credit Funding I, LLC*, 2008 WL 3200630, at *6 (M.D.N.C. Aug. 5, 2008) (Schroeder,

J.) (quoting *Direx*). A "possibility" of future irreparable harm does not suffice. *Real

Truth*, 575 F.3d at 346. As discussed *supra* at 14–17, Plaintiffs lack standing and their

claims are unripe because the injury central to their challenge—assessment of a civil

penalty prior to a jury trial—is speculative. That alleged injury cannot serve as the basis

---

[8] In December 2024, Plaintiffs' same declarant asserted yet again that American Efficient faced "existential risk"—not because of this proceeding, or PJM's withholding of collateral, but because of imminent insolvency due to FERC's November 2024 approval of PJM's removal of energy efficiency resources from its capacity market. *See* **Exs. 5, 6** (Motion for Stay and Request for Rehearing in FERC Dkt. No. ER24-2995, and Order on Rehearing).

    Whether Plaintiffs' harm results from PJM's withholding of collateral and bonus payments, PJM's removal of energy efficiency resources from its capacity market, or some combination thereof, the outcome is the same: the requested preliminary relief would not alleviate Plaintiffs' financial problems, let alone prevent insolvency.

for irreparable harm, either.

## III.    The Balance of the Equities and Public Interest Weigh Against an Injunction.

Plaintiffs must show "that the balance of equities tips in [their] favor" and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. These factors "merge" when the Government is the opposing party. *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 225 (4th Cir. 2024) (quotations omitted); *Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022). "When it is clear that the balance of the equities and public interest do not tip in favor of granting preliminary relief, the injunction cannot issue and it is not necessary to reach the merits." *Covington v. North Carolina*, 2015 WL 13806587, at *3 (M.D.N.C. Nov. 25, 2015) (Schroeder, J.) (quotations omitted). "[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims." *Kim v. FINRA*, 698 F.Supp.3d 147, 172 (D.D.C. 2023) (citing *Benisek v. Lamone*, 585 U.S. 155, 157–58 (2018) (per curiam)).

Plaintiffs ask the Court to set aside the OSC and enjoin the Commission from even considering whether a penalty assessment is appropriate. *E.g.*, Mot. at 29. In other words, Plaintiffs seek to prevent FERC from performing its statutory responsibilities to ensure just and reasonable rates under the FPA. It does not serve the equities, or the public interest, to interfere with an agency's congressionally prescribed "regulatory mission" and "ability to enforce its own rules." *Kim*, 698 F.Supp.3d at 170–71; *see also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (injunction that

23

would prohibit enforcement of statute counsels against injunction); *Hunter*, 527 F.Supp.2d at 18 ("Given . . . the harm that issuing an injunction would cause to FERC's enforcement authority, . . . the public interest would not be served by issuing an injunction at this time.").

Plaintiffs observe that the public interest "favors protecting constitutional rights." Mot. at 28. But as discussed *supra* Argument § I.A, Plaintiffs' chosen pathway is consistent with the Constitution's jury trial guarantee, as interpreted in *Jarkesy*. Regardless, the public interest is best served by allowing the Commission to exercise its statutory obligation to investigate and abate market manipulation that harms ratepayers.

Finally, Plaintiffs allege "existential" harm. That claim is both speculative and untethered to the relief they seek. *Supra* at 21–22 & n.8. Even if Plaintiffs could establish harm, their motion should be denied based on harm that an injunction would do to the public interest. *See Kim*, 698 F.Supp.3d at 170–72; *see also Su*, 2025 WL 338283, at *3.

## CONCLUSION

Plaintiffs are alleged to have obtained hundreds of millions of dollars through fraud. They now seek to prevent the Commission from determining whether these allegations are true, but they present no meritorious reason why they should be allowed to avoid such scrutiny. The Motion should be denied.

24

Dated: March 3, 2025

Respectfully submitted,

DAVID L. MORENOFF
Acting General Counsel

ROBERT H. SOLOMON
Solicitor

SUSANNA Y. CHU
JARED B. FISH
Attorneys

Federal Energy Regulatory Commission
888 First St. NE
Washington, D.C. 20426

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Director
Federal Programs Branch

*/s/ Marianne F. Kies*
MARIANNE F. KIES
DC Bar No. 1023554
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-1819
Email: Marianne.F.Kies@usdoj.gov

*Counsel for Defendants*

25

## CERTIFICATE OF WORD COUNT

I certify that this Opposition complies with the word count limit set forth in Local Civil Rule 7.3(d). The number of words in this Opposition, exclusive of the caption, signature lines, certificate of service, and any cover page or indices, according to the word count feature of the word processing software used to prepare the Opposition, does not exceed 6,250 words.

Respectfully submitted,

*/s/ Marianne F. Kies*
MARIANNE F. KIES
DC Bar No. 1023554
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-1819
Email: Marianne.F.Kies@usdoj.gov
*Counsel for Defendant*

26

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, the foregoing and all attachments were electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

*/s/ Marianne F. Kies*
Marianne F. Kies