**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| American Efficient LLC and Affirmed Energy LLC, <br><br>     *Plaintiffs*, <br><br>                  v. <br><br> Federal Energy Regulatory Commission; Mark C. Christie, Willie L. Phillips, David Rosner, Lindsay S. See, and Judy W. Chang, in their official capacities as Commissioners of the Federal Energy Regulatory Commission, <br><br>     *Defendants.* | Case No. 1:25-cv-68 |

**CITIZENS UTILITY BOARD OF ILLINOIS'S PROPOSED OPPOSITION TO AMERICAN EFFICIENT'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .................................................................................................. 3

ARGUMENT ....................................................................................................... 6

I.  American Efficient has not shown it is likely to succeed on the merits. .......................... 7

    A.  The FPA provides a de novo trial that would satisfy the Seventh Amendment .......... 7

    B.  The public rights exception applies to both of FERC staff's claims. ......................... 10

        1.  The tariff violation claim concerns a public right .................................................. 10

        2.  The anti-manipulation claim concerns a public right. ............................................ 16

II.  The denial of a jury trial is not inherently irreparable, and American Efficient fails to connect its asserted financial injuries to the relief sought ................................................. 17

III. The equities and public interest favor preserving the ability to protect markets and consumers. ............................................................................................................. 20

IV. Any injunction should be narrowly tailored. .................................................................. 20

CONCLUSION ................................................................................................. 21

Case 1:25-cv-00068-TDS-JEP    Document 22-6    Filed 03/04/25    Page 2 of 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Energy Mgmt. All. v. FERC*,
    860 F.3d 656 (D.C. Cir. 2017) ....................................................................................4

*Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*,
    524 U.S. 214 (1998) ...................................................................................................16

*Ares Collective Grp. LLC v. NLRB*,
    No. 24-cv-00517, 2024 WL 4581436 (D. Ariz. Oct. 25, 2024) ...............................18

*Axon v. Federal Trade Commission*,
    598 U.S. 175 (2023) ...................................................................................................18

*Bone v. Univ. of N.C. Health Care Sys.*,
    678 F. Supp. 3d 660 (M.D.N.C. 2023) .....................................................................20

*Bruyea v. United States*,
    174 Fed. Cl. 238 (2024) .............................................................................................16

*Bryan v. BellSouth Commc'ns, Inc.*,
    377 F.3d 424 (4th Cir. 2004) ..............................................................................12, 15

*Burgess v. FDIC*,
    639 F. Supp. 3d 732 (N.D. Tex. 2022) .....................................................................18

*Capital Traction Co. v. Hof*,
    174 U.S. 1, 45 (1899) ...................................................................................................8

*Crowell v. Benson*,
    285 U.S. 22 (1932) ...............................................................................................11, 17

*Dimick v. Schiedt*,
    293 U.S. 474 (1935) .....................................................................................................7

*Enhance-It, LLC v. Am. Access Techs., Inc.*,
    413 F. Supp. 2d 626 (D.S.C. 2006) ..........................................................................16

*FERC v. Barclays Bank PLC*,
    247 F. Supp. 3d 1118 (E.D. Cal. 2017) ......................................................................9

*FERC v. Elec. Power Supply Ass'n*,
    577 U.S. 260 (2016) .....................................................................................................3

Case 1:25-cv-00068-TDS-JEP   Document 22-6   Filed 03/04/25   Page 3 of 29

*FERC v. Maxim Power Corp.*,
  196 F. Supp. 3d 181 (D. Mass. 2016) .................................................................7

*FERC v. Powhatan Energy Fund, LLC*,
  286 F. Supp. 3d 751 (E.D. Va. 2017) ...............................................................7

*FERC v. Powhatan Energy Fund, LLC*,
  949 F.3d 891 (4th Cir. 2020) .............................................................................9

*FERC v. Vitol Inc.*,
  79 F.4th 1059 (9th Cir. 2023) ............................................................................9

*Food & Water Watch v. USDA*,
  1 F.4th 1112 (D.C. Cir. 2021) .........................................................................19

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ........................................................................18

*Hunter v. FERC*,
  527 F. Supp. 2d 9 (D.D.C. 2007) ....................................................................20

*Laird v. Hudson Eng'g Corp.*,
  449 F.2d 216 (5th Cir. 1971) ...........................................................................10

*Leachco, Inc. v. CPSC*,
  103 F.4th 748 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435
  (Jan. 13, 2025) ..................................................................................................18

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
  2 F.4th 330 (4th Cir. 2021) (en banc) .............................................................18

*Marco Supply Co., Inc. v. AT&T Commc'ns., Inc.*,
  875 F.2d 434 (4th Cir. 1989) ...........................................................................16

*Meeker v. Lehigh Valley Railroad Co.*,
  236 U.S. 412 (1915)........................................................................................8, 9

*New York v. FERC*,
  535 U.S. 1 (2002).................................................................................................3

*Oil States Energy Servs. v. Greene's Energy Grp.*,
  584 U.S. 325 (2018)..........................................................................................15

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
  24 F.4th 271 (4th Cir. 2022) ...............................................................2, 12, 15

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
No. 19-cv-233, 2020 WL 1545882 (E.D. Va. Mar. 31, 2020), *aff'd*, 24 F.4th
271 (4th Cir. 2022)...............................................................................................................4

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)............................................................................................................8

*Passavant v. United States*,
148 U.S. 214 (1893)..........................................................................................................17

*In re Peterson*,
253 U.S. 300 (1920)..............................................................................................1, 7, 8, 9

*Ponte v. FDIC*,
No. 24-cv-2379, 2024 WL 4730602 (D.D.C. Oct. 11, 2024) ...........................................17, 18

*Ross v. Meese*,
818 F.2d 1132 (4th Cir. 1987) .............................................................................................18

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*,
127 F.4th 457 (4th Cir. 2025) ..............................................................................................6

*Securities & Exchange Comm'n v. Jarkesy*,
603 U.S. 109 (2024)................................................1, 2, 8, 9, 10, 11, 12, 13, 15, 16

*Sierra Club v. DOE*,
825 F. Supp. 2d 142 (D.D.C. 2011) ....................................................................................19

*Torres Advanced Enter. Sols. LLC v. Mid-Atl. Pros. Inc.*,
No. PWG-12-3679, 2013 WL 531215 (D. Md. Feb. 8, 2013).................................................20

*Tull v. United States*,
481 U.S. 412 (1987)......................................................................................................10, 18

*USA Farm Labor v. Micone*,
No. 23-2108, 2025 WL 586339 (4th Cir. Feb. 24, 2025) ......................................................20

*VB Assets v. Amazon.com Servs.*,
--- F. Supp. 3d ---, No. 19-1410, 2024 WL 4347300 (D. Del. Sept. 30, 2024) ......................10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)...........................................................................................................6, 17

*YAPP USA Auto. Sys., Inc. v. NLRB*,
--- F. Supp. 3d ---, No. 24-12173, 2024 WL 4119058 (E.D. Mich. Sept. 9,
2024) ...............................................................................................................................9, 20

iv

**FERC Orders**

*PJM Interconnection LLC*,
    186 FERC ¶ 61,080 (2024), *set aside in part*, 189 FERC ¶ 61,043 (2024)......................12, 13

*Prohibition of Energy Market Manipulation*,
    114 FERC ¶ 61,047 (2006) ................................................................................................16

**Constitutional Provisions**

U.S. Const., amend. VII ........................................................................................................1

**Statutes**

16 U.S.C. § 823b(d)(1) ......................................................................................................6, 7

16 U.S.C. § 823b(d)(2) .........................................................................................................6

16 U.S.C. § 823b(d)(3)(A) ..................................................................................................1, 6

16 U.S.C. § 823b(d)(3)(B) ...................................................................................1, 6, 7, 9, 10

16 U.S.C. § 824(a) ...........................................................................................................3, 11

16 U.S.C. § 824d(a) ......................................................................................................11, 15

16 U.S.C. § 824d(b) ...........................................................................................................15

16 U.S.C. § 824e(a).....................................................................................................3, 11, 15

16 U.S.C. § 824o(b)(1) ......................................................................................................12

16 U.S.C. § 824v(a) ...........................................................................................................16

**Regulations**

18 C.F.R. § 1c.2 ...............................................................................................................16

18 C.F.R. § 385.1511 ........................................................................................................10

PJM, *Open Access Transmission Tariff*, https://agreements.pjm.com/oatt/18106
    (last visited March 4, 2025) ......................................................................................12, 14

PJM, *Reliability Assurance Agreement*, https://agreements.pjm.com/raa/17174
    (last visited March 4, 2025) .......................................................................4, 5, 12, 13, 14

# INTRODUCTION

This Court should not grant a preliminary injunction. The Federal Energy Regulatory Commission ("FERC") issued a show cause order and proposed penalty against, among others, American Efficient LLC and Affirmed Energy LLC ("American Efficient"). FERC staff alleges that these entities obtained hundreds of millions in market payments—passed on to ordinary ratepayers' utility bills—for consumers' home energy efficiency projects that American Efficient had no part in. If FERC determines a penalty is warranted, the Federal Power Act ("FPA") requires it to "promptly assess" one. 16 U.S.C. § 823b(d)(3)(A). Then, to enforce a penalty, FERC must seek a judgment in federal district court affirming that assessment. The district court has substantial discretion; after a "review de novo" of "the law and the facts," it may "enter a judgment enforcing, modifying, and enforcing as so modified, or setting [the penalty] aside in whole or in [p]art." *Id.* § 823b(d)(3)(B). American Efficient instead asks this Court to enjoin FERC's proceeding, arguing that (as relevant here) the proceeding violates the Seventh Amendment. But the preliminary injunction factors weigh against American Efficient.

American Efficient has not shown a likelihood of success on the merits, for at least two reasons. First, unlike the deferential appellate review in *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109, 117 (2024), the FPA's de novo action fully "preserve[s]" the "right of trial by jury," satisfying the Seventh Amendment. U.S. Const., amend. VII. To enforce any penalty, FERC must bring a district court proceeding subject to the federal rules for civil actions, including a jury trial if necessary. *See* 16 U.S.C. § 823b(d)(3)(B). American Efficient nonetheless argues that any prior FERC proceeding infringes the Seventh Amendment. But the Supreme Court has long approved preliminary proceedings that, as here, leave "the ultimate determination of issues of fact [to] the jury." *In re Peterson*, 253 U.S. 300, 310 (1920).

1

Second, FERC staff's claims do not require a jury trial under the "public rights" exception. There are two distinct claims: (1) that American Efficient violated tariffs[1] governing regional energy markets; and (2) that American Efficient committed fraud in doing so. Both concern public rights and thus may be removed from Article III courts and beyond the Seventh Amendment's reach. As *Jarkesy* confirmed, an Article III court need not resolve a claim enforcing standards "resembl[ing] a detailed building code" rather than borrowing common-law causes of action. 603 U.S. at 137-38. The tariff claim does just that, asserting American Efficient violated technical, FERC-approved standards governing energy efficiency resources' participation in regional capacity markets. The fraud claim similarly targets American Efficient's misrepresentation that it met these standards.

American Efficient also fails to establish irreparable harm. Even if American Efficient were deprived of Seventh Amendment protection, the established remedy is to vacate an adverse ruling and remand for a jury trial—not to stop preliminary proceedings altogether. Moreover, preliminary relief would not remedy American Efficient's asserted financial harms, which stem from third-party actions disconnected from any Seventh Amendment violation. PJM Interconnection, LLC ("PJM")—the primary market in which American Efficient operates—has barred *all* energy efficiency resources from its capacity market, so no matter what this Court does, American Efficient has no viable business in its principal market. American Efficient traces its harm to PJM withholding collateral, but PJM began doing so long before the proceeding for which American Efficient demands a jury. American Efficient seeks no relief that

---

[1] "Tariffs" are documents establishing electricity rates and market practices; once approved by FERC, tariffs "carry the force of federal law," like a federal regulation. *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC* ("*ODEC*"), 24 F.4th 271, 275 (4th Cir. 2022) (cleaned up).

would bind PJM and fails to show that a preliminary injunction—especially one unrelated to the merits of FERC staff's claims—would change PJM's behavior.

American Efficient fares no better on the equities or public interest. Each year, consumers bear billions of dollars in capacity market costs to reliably keep the lights on in future years. The Citizens Utility Board of Illinois ("CUB") and the public have compelling interests in FERC's ability to protect those markets' integrity. Those interests include a swift determination, through procedures Congress crafted, of whether American Efficient unlawfully pocketed hundreds of millions of consumers' dollars. The Court should reject American Efficient's attempt to preempt that process.

## BACKGROUND

FERC issued American Efficient an order to show cause regarding alleged violations of the FPA, FERC's regulations, and tariffs governing regional markets operated by PJM and Midcontinent Independent System Operator, Inc. ("MISO"). *Am. Efficient, LLC*, 189 FERC ¶ 61,196, P 1 (2024) ("OSC"). These markets fall under FERC's jurisdiction to regulate wholesale electricity transactions, which Congress deemed "necessary in the public interest." 16 U.S.C. § 824(a). FERC must ensure that wholesale rates, and rules and regulations affecting them, are "just and reasonable," and not "unduly discriminatory or preferential." *Id.* §§ 824d(a), 824e(a).

In most of the country, FERC successfully "encouraged the creation of nonprofit entities" like PJM and MISO, who own neither power plants nor transmission lines, but "manage[] wholesale markets on a regional basis." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 267-68 (2016); *see also New York v. FERC*, 535 U.S. 1, 5-12 (2002) (discussing evolution of markets and FERC's regulations). In these markets, utilities buy electricity at wholesale before distributing it to end users. In addition to energy markets, where utilities purchase electricity to meet immediate needs, PJM and MISO also operate capacity markets, which aim to ensure an

3

ample electricity supply to meet predicted future needs by requiring utilities to purchase

"commitment[s] to produce electricity or forgo the consumption of electricity when required."

*Advanced Energy Mgmt. All. v. FERC*, 860 F.3d 656, 659-60 (D.C. Cir. 2017).

Because the electrical grid requires a constant, precise balance between electricity

generated and consumed, these markets need complex rules to ensure they procure the correct

amount—at just, reasonable, and non-discriminatory rates. Detailed tariffs, which FERC

approves, provide these rules, including technical standards for the markets' interlocking

components. For example, to determine how much each utility must purchase in PJM's capacity

market, PJM's tariff requires a probabilistic analysis of electricity demand years in advance,

using numerous technical factors. The tariff similarly prescribes how much capacity each power

plant can sell, calculating a percentage of a plant's maximum generation using another multi-

factor analysis. *See infra*, pp. 13-14.

Just as PJM's tariff regulates plants promising to generate electricity, it establishes rules

for energy efficiency resources promising to reduce future consumption.[2] PJM requires the

resource to be "a project, including installation of more efficient devices or equipment or

implementation of more efficient processes or systems, exceeding then-current building codes,

appliance standards, or other relevant standards." *See* PJM, *Reliability Assurance Agreement*,

Schedule 6, § L.1, https://agreements.pjm.com/raa/17174 (last visited March 4, 2025) ("RAA").[3]

The project must be "designed to achieve a continuous . . . reduction in electric energy

consumption at the end-use customer's retail site" during peak demand periods. *Id.* And the

---

[2] These rules governed American Efficient's prior conduct; moving forward, energy efficiency resources cannot participate in PJM's capacity market. *See* Clayton Decl. ¶ 7.

[3] If needed, the Court may "take[] judicial notice of the PJM Tariff." *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, No. 19-cv-233, 2020 WL 1545882, at *1 n.3 (E.D. Va. Mar. 31, 2020), *aff'd,* 24 F.4th 271 (4th Cir. 2022).

4

project must be "fully implemented at all times" during that year, "without any requirement of notice, dispatch, or operator intervention." *Id.* PJM requires submission of "all pertinent project design data," including "the peak-load contribution of affected customers, [and] a full description of the equipment, device, system, or process intended to achieve the load reduction." *Id.* § L.2.

FERC staff alleges American Efficient violated these energy efficiency criteria. American Efficient bought data from major retailers like Home Depot regarding sales of energy efficient products. *Am. Efficient*, 189 FERC ¶ 61,196, App. A at 2 ("Staff Report"). It then calculated possible energy savings from those products and bid them into PJM's and MISO's capacity markets as energy efficiency resources. *Id.* These bids allegedly violated three sets of tariff requirements. First, they were neither "designed to achieve" nor caused energy savings, because American Efficient took no "actions designed to influence customer behavior." *Id.* at 55-63. Second, American Efficient lacked the "nexus" to cause reductions "at an end-use customer location or retail customer facility," because it did not contract with—or even notify—customers who bought and installed efficient products. *Id.* at 64-66. Finally, FERC staff alleges that American Efficient buying "environmental attributes" of products from retailers did not provide the requisite "ownership or equivalent contractual rights[] from an end-use customer *project*." *Id.* at 66 (emphasis added). As FERC staff explained, "[t]he mere fact that a customer chose to buy caulk at The Home Depot does not give The Home Depot rights to the projects that the customer undertakes with that caulk." *Id.* at 69. American Efficient allegedly received hundreds of millions of dollars from these capacity markets without ever causing any actual energy savings. *See id.* at 1-2.

FERC staff also claim American Efficient violated rules against market manipulation by deceiving PJM and MISO about its business model to cover up how its program violated the

tariffs' requirements. *See, e.g.*, *id.* at 81-89. FERC staff further determined that American

Efficient's entire corporate family should also be held liable. *Id.* at 98-104. FERC staff

recommended a $722 million civil penalty and disgorgement of over $250 million in unlawful

profits to PJM and over $2 million to MISO. OSC, P 1.

The FPA gave American Efficient a choice between two procedures to respond to the

show cause order. It could choose a hearing before an administrative law judge and appeal any

penalty in a federal court of appeals. 16 U.S.C. § 823b(d)(1)-(2). Or it could—and did—choose

FERC's "Prompt Penalty Assessment Pathway." *See* Pls.' Mem. Supp. Prelim. Inj. 7, 11, ECF

No. 3 ("Pls.' Mem."). Thus, FERC "shall promptly assess" a penalty if warranted, and if

American Efficient refuses to pay within 60 days, FERC "shall institute an action in the

appropriate district court . . . for an order affirming the assessment." 16 U.S.C. § 823b(d)(3)(A)-

(B). The district court then provides "review de novo [of] the law and the facts" and may affirm,

modify, or set aside part or all of the penalty. *Id.* § 823b(d)(3)(B). American Efficient seeks a

preliminary injunction to halt this process.

## ARGUMENT

American Efficient has not made a "clear showing" of entitlement to the "extraordinary

remedy" of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

(2008). To do so, it "must establish that (1) it is likely to succeed on the merits; (2) it is likely to

suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its

favor; and (4) an injunction is in the public interest." *S.C. Coastal Conservation League v. U.S.

Army Corps of Eng'rs*, 127 F.4th 457, 466 (4th Cir. 2025). All factors weigh against injunctive

relief.

I.    **American Efficient has not shown it is likely to succeed on the merits.**

American Efficient seeks a preliminary injunction based solely on its Seventh Amendment claim. But the FPA preserves any jury-trial right it may have. And the Seventh Amendment does not, in any event, apply to either of FERC staff's claims under the public rights exception.

A.    **The FPA provides a de novo trial that would satisfy the Seventh Amendment.**

The FPA's procedures meet any Seventh Amendment requirements. Before FERC can require American Efficient to pay any penalty "assess[ed]" administratively, it must "institute an action" in federal district court to "affirm[] the assessment of the civil penalty." 16 U.S.C. § 823b(d)(3)(B). That court "review[s] de novo the law and the facts." *Id.* As FERC notes (at 11), the federal rules, including their provision for a jury trial, apply. *See, e.g.*, *FERC v. Powhatan Energy Fund, LLC*, 286 F. Supp. 3d 751, 771 (E.D. Va. 2017) (noting applicability of Federal Rules of Civil Procedure and Evidence); *FERC v. Maxim Power Corp.*, 196 F. Supp. 3d 181, 197 (D. Mass. 2016) (action "culminates, if necessary, in a jury trial").

American Efficient acknowledges (at 11) that it has "elected" this de novo review pathway. *See* 16 U.S.C. § 823b(d)(1). It does not argue that de novo review in district court itself violates the Seventh Amendment. Instead, it argues (at 21-22) that an administrative proceeding *before* the federal court action somehow violates the Seventh Amendment. It is wrong.

The Seventh Amendment permits preliminary proceedings that do not "unduly interfer[e] with the jury's determination of issues of fact." *In re Peterson*, 253 U.S. at 310. It guarantees only a right to "the ultimate determination of issues of fact by the jury." *Id.* It "does not prescribe any particular procedure" or "forbid any [procedure] which does not curtail the function of the jury to decide questions of fact." *Dimick v. Schiedt*, 293 U.S. 474, 491 (1935). For instance, *Capital Traction Co. v. Hof* approved procedures requiring litigants to first undergo a full trial

before a justice of the peace, because litigants later received a jury trial. 174 U.S. 1, 45 (1899). And "many procedural devices developed since 1791," including summary judgment and directed verdicts, are consistent with the Seventh Amendment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979).

Indeed, agencies and other adjudicators can conduct preliminary proceedings, so long as juries remain free to ultimately decide the facts. *Meeker v. Lehigh Valley Railroad Co.* addressed the Interstate Commerce Commission, which could order a refund for a railroad's unlawful rates. 236 U.S. 412, 419-22 (1915). The commission's order was not self-executing; a customer had to sue in district court, where the agency's order supplied only "prima facie evidence." *Id.* at 422, 430. This structure satisfied the Seventh Amendment because it took "no question of fact from either court or jury." *Id.* at 430. *In re Peterson* upheld a similar role for a court-appointed auditor. 253 U.S. at 304, 310-11. The auditor's "preliminary investigation," including interviewing witnesses and filing a report, did not "infringe the constitutional right," where the report provided only "prima facie evidence" before the trial court, leaving the parties free to "call, examine, and cross-examine witnesses as if the report had not been made." *Id.*

The FPA, which provides de novo review without even prima facie weight for FERC's order, thus raises no Seventh Amendment problem. FERC's order "takes no question of fact from either court or jury." *Meeker*, 236 U.S. at 430. American Efficient is free to defend itself "as if the [order] had not been made." *In re Peterson*, 253 U.S. at 311.

American Efficient relies (at 21) on *Jarkesy*, but the case is inapposite. In *Jarkesy*, unlike here, defendants could not insist on a jury trial after the agency proceedings. 603 U.S. at 115. Defendants could obtain review only before a court of appeals, where the agency's "factual

8

findings [were] 'conclusive' if sufficiently supported by the record, even when they rest[ed] on evidence that could not have been admitted in federal court." *Id.* at 117 (citations omitted).

That leaves only American Efficient's policy objections to preliminary proceedings, which are irrelevant to the Seventh Amendment or inaccurate. First, American Efficient complains (at 22) that it must "disobey" the penalty assessment to obtain review. But the assessment and subsequent failure to pay are "merely a mechanism for getting the proceeding into district court," *FERC v. Barclays Bank PLC*, 247 F. Supp. 3d 1118, 1128 (E.D. Cal. 2017), long used to obtain review of an agency order, *see Meeker*, 236 U.S. at 422. And unless a district court "affirm[s]" the penalty, following a jury trial if necessary, FERC cannot force defendants to pay. 16 U.S.C. § 823b(d)(3)(B); *cf. YAPP USA Auto. Sys., Inc. v. NLRB*, --- F. Supp. 3d ---, No. 24-12173, 2024 WL 4119058, at *14 (E.D. Mich. Sept. 9, 2024) (finding no irreparable Seventh Amendment harm where "orders are not self-executing" and require "an order from the court of appeals"). Nothing about that mechanism interferes with the jury's ultimate fact-finding role.

American Efficient similarly complains (at 22) about having to wait for FERC to sue in district court. But preliminary procedures may involve some "delay in reaching the jury trial" without "infring[ing] the constitutional right." *In re Peterson*, 253 U.S. at 310. And there is no basis "to assume that FERC is determined to delay" an action "that is essential to fulfilling its statutory mandate." *FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 904 (4th Cir. 2020) (construing provision for statute-of-limitations purposes). Having expended significant resources to investigate, propose, and assess penalties, "it would make no sense" for FERC to delay filing suit. *Id.* at 905; *accord FERC v. Vitol Inc.*, 79 F.4th 1059, 1068 (9th Cir. 2023) (similar).

Finally, American Efficient claims (at 21-22) that interest accrues once it fails to pay the penalty. That is not clear. FERC's regulations state that, under the de novo review pathway, FERC will seek interest that "begin[s] to accrue on . . . the date on which the appropriate District Court enters final judgment in favor of the Commission." 18 C.F.R. § 385.1511. Regardless, the district court will ultimately determine whether interest applies and when it accrues. *See* 16 U.S.C. § 823b(d)(3)(B). Moreover, even where the Seventh Amendment requires a jury trial on *liability*, judges may determine "*the amount* of civil penalties" without "infring[ing] on the constitutional right." *Tull v. United States*, 481 U.S. 412, 426-27 (1987) (emphasis added). And there is "no merit" to the argument that awarding interest from the initiation of the lawsuit violates the "Seventh Amendment's right to a jury trial." *Laird v. Hudson Eng'g Corp.*, 449 F.2d 216, 217 (5th Cir. 1971). Indeed, prejudgment interest regularly reaches back further to the time of the defendant's wrongdoing. *See VB Assets v. Amazon.com Servs.*, --- F. Supp. 3d ---, No. 19-1410, 2024 WL 4347300, at *18-19 (D. Del. Sept. 30, 2024).

## B. The public rights exception applies to both of FERC staff's claims.

Separately, American Efficient has not shown it is likely to prevail on the merits because the Seventh Amendment does not apply to FERC staff's claims. Both claims fall within the "'public rights' exception" and therefore may be "assign[ed] . . . for decision to an agency without a jury, consistent with the Seventh Amendment." *Jarkesy*, 603 U.S. at 127.

### 1. The tariff violation claim concerns a public right.

FERC staff first claims that American Efficient violated tariffs in PJM and MISO by selling an energy efficiency product that fails the tariffs' criteria for such products. Specifically, American Efficient's product "(1) does not cause reductions in electricity consumption, (2) lacks the nexus to end-use customer projects required by those Tariffs, and (3) does not include the required ownership or contractual rights in end-use customer projects." Staff Report at 4; *see*

10

*also* OSC at 4 nn.13-14 (identifying allegedly violated tariff provisions). This claim falls within the public rights exception.

The public rights exception applies where an agency enforces a complex "regulatory regime" that goes beyond "reiterat[ing] common law terms of art" and instead "resemble[s] a detailed building code." *Jarkesy*, 603 U.S. at 136-37. Thus, where the Occupational Safety and Health Act ("OSH Act") commanded an agency "to develop[] innovative methods, techniques, and approaches for dealing with occupational safety and health problems," agency enforcement of the resulting technical standards met the public rights exception. *Id.* at 137-38 (citation omitted). The statute's purpose "was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to common law." *Id.* at 137. These OSH Act standards thus amounted to public rights as much as other "exercise[s] of the congressional power," including over "interstate and foreign commerce." *See Crowell v. Benson*, 285 U.S. 22, 51 & n.13, 58 (1932) (collecting public rights cases addressing Congress's authority over "rates and practices of interstate carriers" and other issues).

The tariff claim enforces a "detailed building code" for a reliable power grid and wholesale markets that yield just and reasonable rates. Just as the OSH Act empowered an agency to develop new standards, *Jarkesy*, 603 U.S. at 137, the FPA requires FERC to regulate transmission and wholesale sales of energy in interstate commerce, which are "affected with a public interest." 16 U.S.C. § 824(a). And just as the OSH Act requires employers to follow occupational safety and health regulations, *Jarkesy*, 603 U.S. at 136-37, the FPA requires utilities to follow regulatory standards for providing reliable electric service at just and reasonable rates. *See* 16 U.S.C. §§ 824d(a), 824e(a) (requiring "just and reasonable" rates and directing FERC to

11

replace rates that fail that standard); *id.* § 824o(b)(1) (requiring FERC to set grid "reliability standards").

Just as regulations under the OSH Act are highly detailed and technical, *see Jarkesy*, 603 U.S. at 137, so are FERC's regulations and the tariffs it oversees. On top of generally applicable regulations, FERC regulates "regional transmission organizations like PJM" by requiring them "to file schedules of proposed electricity transmission rates with the agency"—known as tariffs—that, once approved, "carry the force of federal law, in the same sense as ordinary federal regulations." *ODEC*, 24 F.4th at 275. These tariffs include detailed, technical standards. For example, PJM's Tariff, which "prescribes rules controlling PJM's management of the mid-Atlantic energy market," *id.*, is a 5,909-page tome regulating the regional grid. PJM, *Open Access Transmission Tariff*, https://agreements.pjm.com/oatt/18106 ("Tariff") (last visited March 4, 2025).

The tariff claim enforces technical standards governing PJM's capacity market.[4] The "administrative construct" of that market, *see PJM Interconnection LLC*, 186 FERC ¶ 61,080 (2024) (Christie, Comm'r, concurring at P 7), *set aside in part*, 189 FERC ¶ 61,043 (2024), is itself so complex that it requires yet more technical standards (on top of standards for the grid). Those standards come from both PJM's Tariff and its Reliability Assurance Agreement ("RAA"), a 275-page document that is also FERC-approved and "the equivalent of a federal regulation." *Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 429 (4th Cir. 2004) (citation omitted); *see* RAA, https://agreements.pjm.com/raa/17174. Even FERC's current Chairman described the capacity market construct as "Rube-Goldberg-esque" and "replete with 'hopeless

---

[4] The Tariff governs numerous other issues, including safely connecting new power plants to the grid, Tariff, Part IV.A, §§ 36.1-.2; and transmitting and metering power, *id.*, Part II, §§ 13-14, 24-25.

complexity,'" suggesting that readers struggling "to read and comprehend a detailed explanation" of the capacity market construct should be warned "(borrowing from Dante): '*Abandon all hope, ye who enter here.*'" *PJM Interconnection LLC*, 186 FERC ¶ 61,080 (Christie, Comm'r, concurring at P 7).

Even a simplified accounting of these standards—avoiding a "blizzard of acronyms, old and new, understandable only to pure insiders," *id.*, P 5—reveals technical complexity that reinforces that they are part of a "detailed building code." *Jarkesy*, 603 U.S. at 136-37. To resolve the claims against American Efficient, an adjudicator must understand both the capacity market's core standards and specialized rules governing energy efficiency resources.

The heart of the capacity market's code is a set of complex, multi-factor analyses determining how much capacity utilities must buy and how much each power plant may sell. On the buy side, the RAA specifies many factors to predict electricity demand years in advance, including: "[s]easonal peak load forecasts"; projected "hourly load shapes and variability, due to weather and other recurring and random factors"; the ability of "every existing and proposed" power plant to generate electricity; how frequently generators face outages or planned maintenance; and how much power the region may import from neighbors during emergencies. RAA, Schedule 4.C.

On the sell side, another multi-step analysis predicts how much of a power plant's theoretical maximum generation it can reliably provide in the future. That calculation considers each plant's "Effective Load Carrying Capability," based on factors such as: "[h]istorical weather and load data"; historical performance and outage rates of different power plant types; and forecasts of what resources may operate in future years. *Id.*, Schedule 9.2.A. This calculation establishes a "Class Rating" for each type of power plant, for example differentiating between

"Tracking Solar" and "Fixed-Tilt Solar" facilities, batteries of different durations, and different types of gas plants. *Id.*, Schedule 9.2.B-C. PJM then does the math to determine how much of a power plant's maximum performance PJM expects it to reliably provide, which determines how much capacity it can sell. *Id.*, Schedule 9.2.D.

Because American Efficient's products claimed to reduce electricity demand, rather than generate power, it was governed by yet another facet of the capacity market's regulatory regime. Under these rules, resources that reduce demand, such as energy efficiency resources, could sell demand reductions in the capacity market, *id.*, Schedule 6, because reducing demand "can be just as valuable as an increase in supply." Staff Report at 7. To ensure that energy efficiency resources genuinely provide this value, they must: (1) be "designed to achieve a continuous . . . reduction in electric energy consumption," RAA, Art. 1; (2) have a nexus to end-use customers by reducing energy use "at the End-Use Customer's retail site," *id.*, Schedule 6, § L.1; and (3) "own[] or have contractual authority to control the . . . load reduction capability," Tariff, Part VI, Attachment DD, § 5.5.[5]

The tariff claim asserts that American Efficient violated these energy efficiency criteria. For example, American Efficient's product allegedly did not "achieve" any reduction in energy demand, because "[a]t no point throughout the lifecycle of its process—acquiring historic sales data, repackaging that data, and submitting it to the ISO/RTOs for payment—does American Efficient interact with the end-use customers or take actions designed to influence customer behavior." Staff Report at 59-60. Likewise, FERC staff alleges that American Efficient neither owned nor had contractual authority over any ability to reduce energy demand, because "American Efficient has no contracts with end-users of energy efficient products," no control

---

[5] MISO's Tariff establishes substantially similar requirements. Staff Report at 55-71.

14

over whether or how consumers used energy efficient products, and "no claim to the fruits of those end-users' work." *Id.* at 69.

FERC's enforcement of technical requirements—a "detailed building code"—governing the capacity market, by requiring regulated entities to meet substantive criteria, fits comfortably within the public rights exception, because that is a "new cause of action . . . unknown to the common law." *Jarkesy*, 603 U.S. at 137 (citation omitted); *see also Oil States Energy Servs. v. Greene's Energy Grp.*, 584 U.S. 325, 335 (2018) (finding patent enforcement "did not exist at common law" (citation omitted)).

American Efficient's only argument as to the tariff claim is (at 16-17, 19) that tariffs resemble contracts. But it acknowledges, as it must, that tariffs are "not *mere* contracts." Pls.' Mem. 16 (quoting *Bryan*, 377 F.3d at 429). Tariffs are instead "the equivalent of a federal regulation," *Bryan*, 377 F.3d at 429 (citation omitted), and FERC must actively ensure they meet the FPA's standards, including treating all market participants reasonably similarly. 16 U.S.C. §§ 824d(a)-(b), 824e(a). No common-law contract would regulate the actions of hundreds of participants in a regional market, much less in the detailed, technical way described above, or impose these terms on new market participants in a take-it-or-leave-it way.

American Efficient relies on *ODEC*, but that case emphasizes the problems with its analogy. Unlike an ordinary contract, a tariff cannot be altered retroactively once FERC approves it. 24 F.4th at 277. Under the "filed-rate doctrine," the tariff is "the only lawful charge." *Id.* at 284-85 (citation omitted). The tariff applies to many different entities, and FERC must evenly apply a consistent set of standards—the complex code discussed above. Allowing post-hoc changes would "promote[] discrimination among ratepayers and impinge[] upon the ratemaking jurisdiction of federal agencies." *Id.* The filed-rate doctrine thus cuts off typical

15

contract claims. For example, a court may provide remedies where a contract is based in fraud. *See, e.g.*, *Enhance-It, LLC v. Am. Access Techs., Inc.*, 413 F. Supp. 2d 626, 631 (D.S.C. 2006). But under the filed-rate doctrine, no contract-like "claim for relief" can alter a tariff's rate, even if a utility's "representation as to applicable rates is fraudulent." *Marco Supply Co., Inc. v. AT&T Commc'ns., Inc.*, 875 F.2d 434, 436 (4th Cir. 1989); *see also Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 227 (1998) ("The rights as defined by the tariff cannot be varied or enlarged by either contract or tort." (citation omitted)).

  That leaves American Efficient's argument (at 16-17) that FERC interprets tariffs using contract principles. But courts borrow contract principles to interpret many documents without converting them to contracts. *See, e.g.*, *Bruyea v. United States*, 174 Fed. Cl. 238, 242 (2024) ("[C]ourts follow the maxim that the construction of *any legal document*—like a statute, contract or patent—should try to give meaning to every term." (citation omitted)).

  **2.**  **The anti-manipulation claim concerns a public right.**

  FERC staff's second claim alleges that American Efficient not only violated PJM and MISO's tariffs, but also engaged in a fraudulent and deceptive scheme to do so, violating FERC's anti-manipulation rule. Staff Report at 71-97; *see* 16 U.S.C. § 824v(a); 18 C.F.R. § 1c.2. While FERC's rule resembles the Securities and Exchange Commission ("SEC") anti-fraud provision considered in *Jarkesy*, 603 U.S. at 125, its underlying purpose is distinct in a dispositive way. FERC's rule exists solely to secure the integrity of the broader regulatory regime that sets technical standards for reliable interstate electricity markets. *See Prohibition of Energy Market Manipulation*, 114 FERC ¶ 61,047, P 32 (2006). FERC itself recognized that this distinguishes it from the SEC's rule, because the SEC establishes a "regime of disclosure" and, unlike FERC, the SEC "does not have a duty to ensure that the price of a security is just and reasonable." *Id.*

The anti-manipulation claim reflects this distinct purpose. American Efficient's allegedly fraudulent conduct served its tariff violations. In particular, American Efficient "falsely represent[ed] that its Program satisfied the tariff obligations to qualify as an [energy efficiency resource]." Staff Report at 4. By "misle[ading] the ISO/RTOs to capture payments for capacity that the Company could not deliver," American Efficient "defrauded the capacity markets and impaired their proper operation." *Id.* at 71. FERC's enforcement of its anti-manipulation rule is different in kind from the SEC action in *Jarkesy*, because FERC's rule functions to protect a broader regulatory scheme that, as a whole, establishes a detailed code for reliable interstate electricity markets that falls under the public rights exception.

In public rights analysis, context is critical. For example, where enforcement of customs penalties already met the public rights exception, *see Crowell*, 285 U.S. at 51 n.13 (citing *Passavant v. United States*, 148 U.S. 214 (1893)), an agency could also levy "additional duties" as "compensation for a violated law," which were "designed to operate as checks and restraints upon fraud," without review in an Article III court. *Passavant*, 148 U.S. at 221-22 (citation omitted) (plaintiffs "cannot be heard to complain of this additional duty or penalty").

## II. The denial of a jury trial is not inherently irreparable, and American Efficient fails to connect its asserted financial injuries to the relief sought.

American Efficient makes no "clear showing" of irreparable harm. *Winter*, 555 U.S. at 22. It first asserts (at 23-24) that any constitutional violation automatically establishes irreparable harm. But even if American Efficient could show a Seventh Amendment violation (it cannot), the jury-trial right differs from rights on which that argument relies. There is no irreparable harm from denial of a jury trial in district court—let alone agency proceedings—because it is "well-established" that this harm "can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial." *Ponte v. FDIC*, No. 24-cv-2379, 2024 WL

4730602, at *8 (D.D.C. Oct. 11, 2024) (collecting cases); *Tull*, 481 U.S. at 415, 427 (remanding for jury trial). Accordingly, "nothing about the [FERC] proceedings will permanently deprive Plaintiffs of their Seventh Amendment right." *See Ares Collective Grp. LLC v. NLRB*, No. 24-cv-00517, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024).

The cases American Efficient cites (at 23-24) do not say otherwise. Most involve other constitutional rights that a new trial could not remedy under the circumstances. *See Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 335-37, 346 (4th Cir. 2021) (en banc) (42 U.S.C. § 1983 suit to enjoin access to unconstitutionally obtained data); *Ross v. Meese*, 818 F.2d 1132, 1133-35 (4th Cir. 1987) (similar *Bivens* action); *Gordon v. Holder*, 721 F.3d 638, 645-46, 653 (D.C. Cir. 2013) ("unconstitutional taxes"). The discussion of a "here-and-now injury" in *Axon v. Federal Trade Commission*, which did not discuss irreparable harm, involved different constitutional allegations about the agency's structure. 598 U.S. 175, 191 (2023); *see also Leachco, Inc. v. CPSC*, 103 F.4th 748, 759 (10th Cir. 2024) (cautioning against converting *Axon*'s "limited jurisdictional holding" into "a broad ruling" on irreparable harm), *cert. denied*, No. 24-156, 2025 WL 76435 (Jan. 13, 2025). Finally, American Efficient's lone Seventh Amendment case, *Burgess v. FDIC*, 639 F. Supp. 3d 732, 749 (N.D. Tex. 2022), ignored the established remedy of a new trial for violations of the jury-trial right. *See, e.g.*, *Ponte*, 2024 WL 4730602, at *8.

American Efficient's asserted financial injuries (at 24-27) also do not establish irreparable harm. For starters, American Efficient presents no evidence of the share of penalties it could ultimately bear, given that FERC staff seeks the same penalties from its parent company; by ignoring this critical issue, American Efficient fails to prove irreparable financial harm. *See* Staff Report at 98-104. Moreover, PJM recently barred all energy efficiency resources from its

capacity market beginning this year. Clayton Decl. ¶ 7. That independent action—not the challenged FERC proceeding—deprived American Efficient of the "primary market in which [it] has historically operated." *Id*. ¶ 6. A preliminary injunction would not affect that decision or preserve American Efficient's financial future.

American Efficient points (at 25) to PJM's retention of certain funds, asserting that PJM's action caused difficulty with its principal lender and prospective new ones and claiming that it will soon become insolvent. Clayton Decl. ¶¶ 11-13. But PJM's action stemmed from FERC's investigation, not the lack of a jury trial for any potential penalty assessment—"the conduct in dispute." *Sierra Club v. DOE*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011). PJM began withholding these payments in June 2023, Clayton Decl. ¶ 10, well before the December 2024 show cause order "commence[d]" the penalty assessment proceeding, Pls.' Mem. 7 (quoting *Powhatan Energy Fund*, 949 F.3d at 895). This problem will not be "remedied by the relief sought." *Sierra Club*, 825 F. Supp. 2d at 153.

Hence, the asserted injuries flow from actions of third parties like PJM, and American Efficient has not shown that preliminary relief would cause—let alone require—PJM to release funds or lenders to provide new ones. *Cf. Food & Water Watch v. USDA*, 1 F.4th 1112, 1118 (D.C. Cir. 2021) (noting "lack of any evidence about what the lender . . . would do" if the court granted relief). Indeed, American Efficient's declarant admits that the very trial it seeks would not help it. Clayton Decl. ¶ 18 ("proceed[ing] with further, lengthy litigation" would cause "insolvency"). American Efficient does not want a jury trial; it wants to escape adjudication altogether.

19

**III.    The equities and public interest favor preserving the ability to protect markets and consumers.**

On the third and fourth factors, American Efficient argues solely (at 28) that there is no public or equitable interest in maintaining an unlawful agency action. But the Fourth Circuit just warned against "improperly collaps[ing] the first *Winter* factor—likelihood of success on the merits—with the merged balance of equities and public interest factor." *USA Farm Labor v. Micone*, No. 23-2108, 2025 WL 586339, at *4 (4th Cir. Feb. 24, 2025). Courts must "separately" consider each factor. *Id.* at *4-5 (affirming denial of preliminary relief where "balance of the equities and the public interest did not tip in favor of an injunction").

The equities counsel against a preliminary injunction. Consumers pay billions every year in these markets to keep their lights on. Enjoining "FERC's enforcement authority" to protect these markets would harm the public, *see Hunter v. FERC*, 527 F. Supp. 2d 9, 18 (D.D.C. 2007), and "[FERC's] mission," *Torres Advanced Enter. Sols. LLC v. Mid-Atl. Pros. Inc.*, No. PWG-12-3679, 2013 WL 531215, at *6 (D. Md. Feb. 8, 2013). And it would prevent a determination whether American Efficient must return hundreds of millions of dollars to consumers, including those CUB protects.

**IV.    Any injunction should be narrowly tailored.**

Injunctive relief is "dictated by the extent of the [likely] violation established." *Bone v. Univ. of N.C. Health Care Sys.*, 678 F. Supp. 3d 660, 697 (M.D.N.C. 2023) (citation omitted). For example, any constitutional issue regarding the date interest accrues would support, at most, prohibiting FERC from assessing interest at the wrong time. *See YAPP*, 2024 WL 4119058, at *14 (stating that "at most" a preliminary injunction should "prohibit[] the NLRB from seeking [certain] remedies," not "halt[] the entire administrative process"). Similarly, if any

20

constitutional issue stems solely from the anti-manipulation claim, then any injunction should be limited to that claim.[6]

## CONCLUSION

For these reasons, the Court should deny the preliminary injunction motion.


Dated: March 4, 2025                                Respectfully submitted,

                                                    /s/ Alexander L. Tom
                                                    Alexander L. Tom
                                                    CA Bar No. 321256
                                                    Earthjustice
                                                    50 California Street
                                                    Suite 500
                                                    San Francisco, CA 94111
                                                    (415) 217-2111
                                                    atom@earthjustice.org

                                                    Nick Lawton*
                                                    DC Bar No. 1046604
                                                    Earthjustice
                                                    1001 G Street, NW
                                                    Suite 1000
                                                    Washington, DC 20001
                                                    (202) 780-4835
                                                    nlawton@earthjustice.org

                                                    /s/ James L. Conner II
                                                    James L. Conner II
                                                    N.C. Bar No. 12365
                                                    Calhoun, Bhella & Sechrest, LLP
                                                    4819 Emperor Boulevard
                                                    Suite 400
                                                    Durham, NC 27703
                                                    (919) 887-2607
                                                    jconner@cbsattorneys.com

                                                    *Counsel for Movant-Intervenor*
                                                    *Citizens Utility Board of Illinois*

                                                    * Local Rule 83.1(d) special
                                                    appearance forthcoming.

---

[6] American Efficient has neither requested nor supported preliminary injunctive relief beyond the two plaintiff companies in this action. *See* Prelim. Inj. Mot. 1, ECF No. 2.

21

## CERTIFICATION OF WORD COUNT

I certify that this brief complies with Local Rule 7.3(d). The number of words in this brief, exclusive of the caption, signature lines, certificate of service, and any cover page or indices, it does not exceed 6,250 words.

Dated: March 4, 2025

Respectfully submitted,

/s/ Alexander L. Tom
Alexander L. Tom

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing and all attachments with the Clerk of the Court using the Court's CM/ECF system.

Dated: March 4, 2025                                              Respectfully submitted,

<u>/s/ Alexander L. Tom</u>
Alexander L. Tom