# EXHIBIT A

2025 WL 2389422
Only the Westlaw citation is currently available.
United States Court of Appeals, Fourth Circuit.

Joe MANIS, Plaintiff - Appellant,
v.
U.S. DEPARTMENT OF AGRICULTURE; Brooke L. Rollins, in her official capacity as the Secretary of Agriculture; Michael Watson, in his official capacity as Administrator of the Animal & Plant Health Inspection Service, Defendants - Appellees.

No. 24-1367
|
Argued: December 10, 2024
|
Decided: August 18, 2025
|
Amended: August 21, 2025

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., District Judge. (1:24-cv-00175-WO-JLW)

**Attorneys and Law Firms**

ARGUED: Joshua Martin Robbins, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, for Appellant. Graham W. White, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. ON BRIEF: Thomas B. Kakassy, Gastonia, North Carolina; Allison D. Daniel, PACIFIC LEGAL FOUNDATION, Arlington, Virginia, for Appellant. Brian M. Boynton, Principal Deputy Assistant Attorney General, Joshua M. Salzman, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Sandra J. Hairston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Before KING, WYNN, and THACKER, Circuit Judges.

**Opinion**

Affirmed by unpublished per curiam opinion.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

*1 Joe Manis ("Appellant") sought a preliminary injunction to enjoin United States Department of Agriculture ("USDA") proceedings charging him with violating the Horse Protection Act ("HPA"). Because Appellant fails to make an adequate showing of irreparable harm, we affirm the district court's denial of a preliminary injunction.

I.

A.

Tennessee Walking Horses are known for their distinctive, smooth gaits. These horses are entered into horse shows and competitions featuring their gaits. The distinctive walking patterns are "achieved through selective breeding and training with equipment." *Stamper v. Sec'y of Agriculture*, 722 F.2d 1483, 1484 (9th Cir. 1984). Unfortunately, the distinctive gaits can also be replicated through abuse of the horse. Making the forelimbs of the horse "sore" by inflicting pain requires the horse to quickly lift its feet when it walks, which mimics the desired gait. *Id.* In response to this practice of abuse, and to ensure fairness in Tennessee Walking Horse competitions, Congress enacted the 1970 HPA. 15 U.S.C. § 1821 *et seq.*

The HPA makes it illegal to show or exhibit any horse which is "sore." 15 U.S.C. § 1824(2). The HPA is enforced through inspections at horse shows. A horse found to be "sore" is disqualified from the competition and the liable individuals may be banned from further participation in horse competitions.

The USDA has the authority to initiate civil enforcement proceedings to ensure compliance with the HPA. The Animal and Plant Health Inspection Service ("APHIS") is an arm of the USDA tasked with carrying out enforcement of the HPA. After notice and a hearing, the Secretary of Agriculture ("Secretary") can impose civil monetary penalties and disqualify violators from the walking horse industry. The Secretary is permitted to delegate this authority and create the position of the Judicial Officer [*] pursuant to 7 U.S.C. § 6912(a)(1) ("[T]he Secretary may delegate to any agency, office, officer, or employee of the Department the authority to perform any function transferred to the Secretary."). Pursuant to this authority, the Secretary has directed that HPA violation proceedings be conducted through the USDA in-

house adjudication process, and has delegated his decision making authority to the USDA's Judicial Officer. Despite this delegation, the Secretary can choose to exercise adjudicatory authority himself and can revoke authority previously delegated to the Judicial Officer. *See* 7 C.F.R. § 2.12 ("No delegation of authority by the Secretary or a general officer contained in this part shall preclude the Secretary or general officer from exercising any of the authority so delegated.").

**\*2** In order to begin the administrative hearing process, a complaint must be filed with the USDA alleging a violation of the HPA. The respondent then has twenty days to answer the complaint. 7 C.F.R. § 1.136(a). Any party to the proceeding is then entitled to a hearing before an Administrative Law Judge ("ALJ") upon request. *Id.* § 1.141(a). ALJs are appointed pursuant to 5 U.S.C. § 3105 and exercise their decision making authority through a designation by the Secretary pursuant to the Administrative Procedure Act. 5 U.S.C. § 556(b)(3). An ALJ's decision becomes final if no party appeals the decision within 30 days.

A party has one appeal as of right from the ALJ's decision to the USDA Judicial Officer. The decision of the Judicial Officer is final for purposes of administrative review with the USDA and cannot be appealed to the Secretary or any other USDA employee. Nevertheless, a party may petition the Judicial Officer for a rehearing or reconsideration of their decision, but rehearing or reconsideration is not required.

After exhausting administrative review, a party can pursue review of the decision of the Judicial Officer outside of the agency scheme -- in the United States courts of appeal, at which factual findings can be set aside only if found to be unsupported by substantial evidence.

B.

On May 19, 2023, APHIS filed an administrative complaint against Appellant alleging that he violated the HPA by allowing entry of a "sore" horse into a Virginia horse show. On June 1, 2023, Appellant answered the complaint and requested that the case either be dismissed or adjudicated through a full hearing on the merits. On February 22, 2024, Appellant moved before the ALJ to dismiss the administrative proceedings, arguing that the HPA administrative adjudication process suffered from various constitutional defects. Appellant indicated his intent to pursue his constitutional challenge to the administrative process through a collateral district court proceeding. Because of this imminent collateral challenge, Appellant requested that the administrative hearing be stayed pending resolution of the collateral proceeding. The ALJ denied the motion to dismiss and declined to stay the case.

On March 1, 2024, Appellant filed a collateral complaint in the Middle District of North Carolina alleging that the USDA administrative process violated the Constitution in four ways. First, Appellant asserts that the process violates the Appointments Clause of Article II, Section 2, Clause 2 of the Constitution because the Judicial Officer exercises principal officer authority without appointment by the President or confirmation by the Senate. Second, Appellant asserts that USDA ALJs are unconstitutionally protected from removal by two layers of tenure protection, in violation of Article II, Section 3 of the Constitution. USDA ALJs can only be removed for good cause, which must be determined by the tenure protected Merit Systems Protection Board ("MSPB"). Therefore, the President cannot determine what constitutes good cause for removing an ALJ without first finding that the good cause determination of the MSPB is so unreasonable that it constitutes sufficient cause for removal. Appellant argues that these two layers of protection prevent the President from fulfilling his Article II obligation to take care that the laws are faithfully executed. Third, Appellant alleges that adjudication of violations of the HPA requires a jury trial pursuant to the Seventh Amendment. Fourth, Appellant claims that the USDA HPA adjudication process violates Article III of the Constitution because it adjudicates private rights before an agency and not in an Article III court.

**\*3** Appellant then filed a motion for a temporary restraining order and preliminary injunction of the USDA proceedings. The district court denied both of Appellant's requests in separate opinions, concluding that Appellant failed to demonstrate a sufficient likelihood of success on the merits as to all four of the asserted constitutional challenges.

Appellant filed this timely appeal pursuant to 28 U.S.C. § 1292(a)(1), challenging the denial of the preliminary injunction. We heard oral argument on this appeal on December 10, 2024.

Thereafter, on February 1, 2025, the USDA ALJ ruled that Appellant violated the HPA and imposed a $10.00 civil penalty and a one year industry wide disqualification that would bar Appellant from " 'showing, exhibiting or entering any horse' or 'participating in any horse show, horse

exhibition, or horse sale or horse auction.' " *Supplemental Authorities* at 1, 24-1367, ECF No. 49 (4th Cir. Feb. 5, 2025). Appellant represented that he would file an appeal of the decision of the ALJ to the Judicial Officer.

## II.

We review a district court's denial of a motion for a preliminary injunction for abuse of discretion. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023). In determining whether the district court abused its discretion, we review factual findings for clear error and legal conclusions de novo. *Id.* (citing *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013)). In order to obtain the "extraordinary relief of a preliminary injunction," a plaintiff must demonstrate four factors: (1) a likelihood of success on the merits; (2) a showing of irreparable harm if preliminary relief is not granted; (3) that the balance of equities favors granting the injunction; and (4) that an injunction is in the public interest. *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant must satisfy all of the *Winter* factors to prevail. *Henderson v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018) ("*Winter* made clear that *each* of these [ ] factors must be satisfied to obtain preliminary injunctive relief." (emphasis in original)). Importantly, "a preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (internal citation omitted).

## III.

The district court denied Appellant's request for a preliminary injunction solely because Appellant could not demonstrate a likelihood of success on the merits. On appeal, Appellant argues that he is likely to succeed on his constitutional challenges to the structure of the USDA HPA administrative proceedings, and that he is otherwise entitled to a preliminary injunction based on the alleged constitutional defects. Because a failure to demonstrate any one of the *Winter* factors is fatal, we decline to address Appellant's likelihood of success on the merits. Instead, we conclude that Appellant fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief. *E.g.*, *Henderson v. Bluefield Hosp. Co.*, 902 F.3d 432, 438–39 (4th Cir. 2018) (holding that a preliminary injunction may properly be denied based solely on the movant's failure to show the likelihood of irreparable harm in the absence of preliminary relief).

Appellant alleges that *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 195–196 (2023), mandates a finding of irreparable harm whenever a litigant is required to litigate in an allegedly unconstitutionally structured agency proceeding. That is incorrect. In *Axon*, two respondents were in administrative proceedings before the Securities Exchange Commission ("SEC") and the Federal Trade Commission ("FTC"). Both respondents sought to enjoin the agency proceedings through a collateral suit in district court arguing that "some fundamental aspect of the [agencies'] structure violates the Constitution." *Id.* at 182. The respondents alleged that each agency's ALJ's were improperly insulated from the Executive -- due to good cause removal protections determined by the MSPB -- in violation of Article II of the Constitution.

**\*4** Both respondents premised jurisdiction over these structural constitutional challenges on district courts' federal question jurisdiction pursuant to 28 U.S.C. § 1331. At issue before the Court was whether the statutory schemes of the Exchange Act and the FTC Act displaced district court jurisdiction over the respondents' constitutional claims, that is, whether the respondents could pursue their challenges in collateral district court proceedings or instead through the traditional administrative agency exhaustion. Consistent with traditional administrative agency review schemes, both the Exchange Act and FTC Act provide for appellate review in a federal court of appeals after completion of the administrative agency's own review process.

Therefore, the issue the Court confronted was whether parties to an ongoing proceeding before a governmental agency were required to first go through the agency's administrative process before suing in federal court to challenge the structural constitutionality of the administrative proceedings. The Court held that this was not required, concluding that the Exchange and FTC Acts did not divest federal district courts of jurisdiction to hear structural constitutional challenges in collateral proceedings. The Court held that because structural challenges "present a here and now injury" that is "impossible to remedy once the proceeding is over" an aggrieved party must be able to file a collateral challenge during the duration of the administrative proceeding. *Axon Enterprise, Inc.*,

598 U.S. at 191 (internal citation omitted). It is this language in *Axon* upon which Appellant bases his argument that being forced to participate in an allegedly unconstitutional agency proceeding necessarily qualifies as irreparable harm sufficient to warrant a preliminary injunction. Appellant claims that because an unconstitutionally structured proceeding constitutes an injury sufficient to confer collateral district court jurisdiction it must also suffice to establish the showing of irreparable harm required for injunctive relief.

Appellant is incorrect, and *Axon* does not help his cause. As explained, *Axon* addressed only a distinct jurisdictional question -- whether Congress intended to divest district courts of jurisdiction they would ordinarily possess by requiring that parties instead litigate their claims through agency proceedings. *Axon Enterprise, Inc.*, 598 U.S. at 185– 86. The Court's answer to this question turned on the determination that a structural constitutional question both is "wholly collateral to" the questions at issue in agency proceedings and lies "outside the agency's expertise." *Id.* But, critically, "the Court [in *Axon*] did not speak to what constitutes irreparable harm for purposes of the extraordinary remedy of a preliminary injunction." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1336 (D.C. Cir. 2024). And here, Appellant has already received the benefit of *Axon* by filing a collateral challenge to the USDA HPA proceeding in district court and alleging constitutional deficiencies.

*Axon* did not address the distinct question we are presented with in this case: that is, whether being subject to an allegedly constitutionally deficient proceeding necessarily demonstrates the required showing of irreparable harm necessary to obtain a preliminary injunction. See *Alpine Sec. Corp.*, 121 F.4th at 1336. ("[T]he question before us, which was not answered in *Axon*, is whether the injury [the appellant] claims is so great that it necessitates accelerated and unorthodox summary review of the merits without a developed factual record."). At most, *Axon* holds that a litigant can pursue a federal court challenge to an allegedly unconstitutionally structured agency proceeding while the proceeding remains before the agency. Crucially, "it does not say that every agency proceeding already underway must immediately be halted because of an asserted constitutional flaw." *Id.* Extending the holding of *Axon* in this circumstance would require a per se finding of irreparable harm whenever a plaintiff alleges constitutional deficiency in a collateral proceeding challenging their subjection to an agency proceeding. See *Leachco v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 759 (10th Cir. 2024) ("[W]e will not misunderstand what was said about jurisdiction in *Axon* as a holding on a party's entitlement to relief based on an unconstitutional removal provision ... otherwise, the Supreme Court's limited jurisdictional holding in *Axon* would be converted to a broad ruling that creates an entitlement on the merits to a preliminary injunction in every case where such constitutional challenges are raised." (internal citation omitted)). We will not make that leap.

**\*5** Therefore, Appellant fails to demonstrate irreparable harm pending the resolution of the merits in the district court. Because failing to demonstrate any one *Winter* factor is enough to defeat Appellant's motion for a preliminary injunction, and Appellant fails to make this required showing, we decline to consider the remaining *Winter* factors.

IV.

We affirm the district court's denial of the preliminary injunction.

*AFFIRMED*

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 2389422

---

**Footnotes**

\*  "The Judicial Officer is delegated authority by the Secretary of Agriculture to act as final deciding officer in USDA adjudicatory proceedings." *U.S. Department of Agriculture*, Office of the Judicial Officer, (Aug.

01, 2025), https://www.usda.gov/about-usda/general-information/staff-offices/office-hearings-and-appeals/office-judicial-officer [https://perma.cc/62GW-EUU9].

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.