IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AMERICAN EFFICIENT LLC and
AFFIRMED ENERGY LLC,

   Plaintiffs,

       v.                    1:25-cv-68

FEDERAL ENERGY REGULATORY
COMMISSION; MARK C. CHRISTIE,
WILLIE L. PHILLIPS, DAVID
ROSNER, LINDSAY S. SEE, and JUDY
W. CHANG, in their official
capacities as Commissioners of
the Federal Energy Regulatory
Commission,

   Defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

    In this case, Plaintiff American Efficient LLC and its wholly owned subsidiary, Affirmed Energy LLC (collectively, "American Efficient"), raise constitutional challenges to the authority and structure of the Federal Energy Regulatory Commission ("FERC"), which is investigating it for possible assessments of penalties and disgorgement of profits. Before the court is American Efficient's motion to preliminarily enjoin FERC from proceeding (Doc. 2), and Citizens Utility Board of Illinois ("CUB") moves to intervene as a Defendant (Doc. 22). For the reasons set forth below, CUB's motion to intervene will be GRANTED and American

Efficient's motion for preliminary injunction will be DENIED.

I.  **BACKGROUND**

American Efficient is an aggregator of distributed energy efficiency resources. (Doc. 1 ¶ 20.)  As an aggregator, American Efficient contracts with manufacturers, distributors, and retailers of energy efficient products for the rights to the capacity reductions associated with those products. (Id.)  In return, American Efficient compensates its program partners for each energy efficient product they sell. (Id.)  It then bundles the energy savings from a large number of products and offers them in FERC-regulated "capacity auctions," where private parties bid to provide "capacity" by either producing electricity or (as in American Efficient's case) reducing electricity consumption in the future.  These capacity auctions are conducted by Regional Transmission Organizations ("RTOs") under FERC's oversight and governed by the terms of FERC-approved documents known as "tariffs." (Id. ¶ 21 & n.1.)  Historically, American Efficient has participated in capacity auctions conducted by PJM Interconnection, L.L.C. ("PJM") and Midcontinent Independent System Operator, Inc. ("MISO"). (Id. ¶¶ 18, 24, 40.)

On December 16, 2024, after a three-year investigation, FERC issued American Efficient an Order to Show Cause (the "Show-Cause Order"). (Doc. 19-1.)  The Show-Cause Order alleges that American Efficient engaged in market manipulation in violation of the

2

Federal Power Act and FERC regulations and violated the terms of the PJM and MISO tariffs, directing American Efficient to "show cause" why it should not be held liable for $722 million in civil penalties and over $250 million in disgorged profits. (Id. at 5-7.)

On January 29, 2025, American Efficient commenced this action, filing a complaint and concurrent motion for preliminary injunction. (Docs. 1, 2.) Count One of the complaint alleges that the Show-Cause Order and proceedings against American Efficient violate the Seventh Amendment and Article III of the Constitution. (Doc. 1 ¶¶ 112-17.) Count Two alleges that the removal protections for the FERC Commissioners responsible for the Show-Cause Order violate the separation of powers and Article II of the Constitution. (Id. ¶¶ 118-23.)

On March 4, 2025, CUB filed its motion to intervene. (Doc. 22.) CUB is a statutory "nonprofit public body" created by the state of Illinois to represent and protect the interests of its residential utility consumers. (Doc. 22-1 at 3.) Any private person or entity within Illinois who receives a utility service from a public utility is eligible to apply for membership. (Id.) CUB's statutory charter tasks it to "intervene as a party or otherwise participate on behalf of utility consumers in any proceeding which affects the interest of utility consumers" and "represent the interests of utility consumers before . . . the

3

Federal Energy Regulatory Commission, . . . the courts, and other public bodies." 220 Ill. Comp. Stat. Ann. §§ 10/5(2)(d)-(e).

American Efficient's motion for preliminary injunction is now fully briefed (Docs. 3, 19, 25), as is CUB's motion to intervene (Docs. 22-1, 28, 29, 30). A hearing on both motions was held on October 10, 2025. (Doc. 41.) CUB has also filed a proposed opposition to American Efficient's motion for preliminary injunction, to which American Efficient has responded. (Docs. 22-6, 42.) The court will address CUB's motion to intervene first to determine whether the court should consider CUB's supplemental filings.

## II. ANALYSIS

### A. Motion to Intervene

CUB seeks intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or permissively under Rule 24(b). (Doc. 22-1 at 8, 13.) Because the court finds the latter warranted, it need not address the former.

Under Rule 24(b), the court may permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene on timely motion. Fed. R. Civ. P. 24(b)(1)(B). The rule also provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Thus, where a movant seeks

4

permissive intervention as a defendant, the movant must satisfy three requirements: (1) the motion is timely; (2) the defenses or counterclaims have a question of law or fact in common with the main action; and (3) intervention will not result in undue delay or prejudice to the existing parties." Carcaño v. McCrory, 315 F.R.D. 176, 178 (M.D.N.C. 2016). Rule 24(b) is construed liberally to allow intervention where appropriate. Id. (citing Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986)). Whether to permit intervention lies in the trial court's sound discretion. Stuart v. Huff, 706 F.3d 345, 349-50 (4th Cir. 2013).

FERC contends that intervention is "unnecessary" but does not oppose CUB's motion to intervene (Doc. 29 at 1), so the dispute is between American Efficient and CUB.

As to the first requirement, CUB contends that its motion is timely because it was filed when the case was still at the pleadings stage, only 34 days after the complaint was filed, and American Efficient cannot credibly cite any prejudice. (Doc. 22-1 at 8-9.) American Efficient argues that CUB's motion is untimely, as it was filed "more than a month" after the complaint and motion for preliminary injunction were filed and "risks delay" of this court's ruling on the injunction request. (Doc. 28 at 5.)

The court finds the motion to intervene timely. When the motion was filed, the case had not progressed past the initial pleading stage; indeed, FERC had not yet filed an answer. See,

5

e.g., League of Women Voters of N.C. v. North Carolina, No. 1:13CV660, 2014 WL 12770081, at *2 (M.D.N.C. Jan. 27, 2014) (finding motion to intervene timely "[m]ost significantly" because it was filed "well before the . . . deadline for amendments to pleadings"); United States v. Virginia, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."); MacGregor v. Farmers Ins. Exch., No. 2:10-cv-03088, 2012 WL 5380631, at *2 (D.S.C. Oct. 31, 2012) (motion to intervene untimely when filed "more than five months after the deadline to join other parties and amend the pleadings"). American Efficient's argument of untimeliness is unpersuasive. (Doc. 28 at 8.) CUB filed its motion to intervene on March 4, 2025, almost a week before American Efficient's reply on the motion for preliminary injunction was due. (Doc. 25.) Further, American Efficient was permitted to file an additional reply (Doc. 42) to address CUB's proposed brief in opposition to the preliminary injunction (Doc. 22-6).

As to the second requirement, CUB argues that American Efficient's actions FERC seeks to enjoin harmed Illinois utility consumers whom CUB has a statutory duty to protect, this action threatens CUB's "broader interest" in FERC's ability to investigate "companies that take money from ratepayers' pockets," and the relief American Efficient seeks would render CUB's charter to intervene in FERC proceedings a nullity. (Doc. 22-1 at 9.)

American Efficient contends that CUB has no "claim or defense" because CUB has not asserted any interest that would allow it to sue or be sued in a similar action. (Doc. 28 at 17 (citing Diamond v. Charles, 476 U.S. 54, 77 (1986) (O'Connor, J., concurring in part and concurring in the judgment)).) CUB replies that it has raised a defense against American Efficient's constitutional claims and that Rule 24(b) does not require CUB to be independently subject to suit on that defense. (Doc. 30 at 14 (citing Cawthorn v. Amalfi, 35 F.4th 245 (4th Cir. 2022)); see Docs. 22-5, 22-6 (CUB's proposed answer to American Efficient's complaint and proposed memorandum in opposition to American Efficient's motion to dismiss).)

Rule 24(b) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." SEC v. U.S. Realty & Improvement Co., 310 U.S. 434, 459 (1940). "Although the rule speaks in terms of a 'claim or defense' this is not interpreted strictly," and "intervention has been allowed in situations where the existence of any nominate 'claim' or 'defense' is difficult to find." Nuesse v. Camp, 385 F.2d 694, 704 (D.C. Cir. 1967) (citation omitted). Thus, as CUB notes in its reply (Doc. 30 at 14-15), courts frequently grant permissive intervention to persons or entities who wish to defend the validity of statutes or regulations they do not administer but in which they have an interest. See

<u>Cawthorn</u>, 35 F.4th 245 (reversing and granting permissive intervention to a voter who sought to defend a state administrative proceeding against constitutional challenges); <u>N.C. Growers' Ass'n, Inc. v. Solis</u>, No. 1:09CV411, 2009 WL 4729113, at *1 (M.D.N.C. Dec. 3, 2009) (granting permissive intervention to farmworker's union which sought to defend an administrative rule against statutory challenges); <u>King v. Christie</u>, 981 F. Supp. 2d 296, 302 (D.N.J. 2013), <u>aff'd sub nom.</u> <u>King v. Governor of the State of N.J.</u>, 767 F.3d 216 (3d Cir. 2014) (granting permissive intervention to a civil rights advocacy organization that sought to defend a statute against constitutional challenges).[1]

Here, CUB's proposed answer (Doc. 22-5) seeks to defend FERC's adjudicatory regime, thus sharing questions of law and fact with the main action. Included in this is CUB's defense of FERC and its administrative procedures against American Efficient's

---

[1] In a footnote in its discussion of intervention as of right, American Efficient argues that Article III standing should be required of an intervenor. (Doc. 28 at 11 n.1.) American Efficient has not advanced this argument as to permissive intervention specifically, and the court therefore does not consider it. Notably, no Fourth Circuit cases are cited, and the vast majority of circuits reject any requirement where a plaintiff's Article III standing otherwise exists. See, e.g., <u>U.S. Postal Serv. v. Brennan</u>, 579 F.2d 188, 190 (2d Cir. 1978); <u>King v. Governor</u>, 767 F.3d at 245–46; <u>Ruiz v. Estelle</u>, 161 F.3d 814, 830–33 (5th Cir. 1998); <u>Purnell v. City of Akron</u>, 925 F.2d 941, 948 (6th Cir. 1991); <u>Yniguez v. Arizona</u>, 939 F.2d 727, 731 (9th Cir. 1991); <u>San Juan County v. United States</u>, 503 F.3d 1163, 1171–72 (10th Cir. 2007); <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1213 (11th Cir. 1989). <u>But see</u> <u>Mausolf v. Babbitt</u>, 85 F.3d 1295, 1300 (8th Cir. 1996); <u>S. Christian Leadership Conf. v. Kelley</u>, 747 F.2d 777, 779 (D.C. Cir. 1984); <u>United States v. 36.96 Acres of Land</u>, 754 F.2d 855, 859 (7th Cir. 1985).

constitutional challenges. CUB also argues that FERC's defense is inadequate. Importantly, CUB seeks to defend against American Efficient's Article II challenge in Count II on a ground that FERC has stated it will <u>not</u> contest - i.e., that the for-cause removal provisions applicable to FERC's commissioners are constitutional. (<u>See</u> Docs. 22-1 at 6, 13; 30 at 13-14.) CUB also seeks to raise arguments against American Efficient's claims in Count One that FERC's assessment scheme does not fall within the "public rights" exception to the Seventh Amendment right to jury trial, as discussed <u>infra</u>, which FERC's briefing did not address. In these respects, FERC's contention that intervention is "unnecessary" is not entirely accurate; FERC has indicated that it has no intention of defending these aspects of American Efficient's challenges. CUB's burden to show inadequacy of representation is "minimal," <u>Trbovich v. United Mine Workers</u>, 404 U.S. 528, 538 n.10 (1972), thus satisfying this condition.

Here, CUB also has an interest of sorts – an economic one -- although it is clearly contingent. FERC's "Enforcement Staff Report and Recommendation" (the "Staff Report") (Doc. 19-1 at 9) in support of the Show-Cause Order recommends that FERC order American Efficient to disgorge millions of dollars in profits, some of which it recommends be returned to CUB's consumers. (Doc. 22-1 at 4; <u>see</u> 7C Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 1911 (3d ed. 2007) ("Permissive intervention may be

9

permitted when the intervenor has an economic interest in the outcome of the suit.").) While this interest depends on FERC adopting the Staff Report and further ordering return of disgorged profits to CUB's ratepayers, CUB notes that return of profits is consistent with FERC's penalty guidance and that CUB has been permitted to intervene in FERC proceedings in the past on the question of remedy. (Doc. 41 at 92, 96.) CUB's argument actually mirrors that made by American Efficient as to immediacy of harm; namely, American Efficient argues that there is a high likelihood that FERC will follow the Staff Report recommendation in some dollar amount. (See Doc. 25 at 9-10.) CUB also contends that if American Efficient were to prevail in this case it would eliminate CUB's ability to file a request of FERC staff for an investigation, and there would likely be no other way FERC could bring a "free standing action to seek these kinds of penalties." (Doc. 41 at 95.) Though American Efficient dubs CUB's interest speculative, "close scrutiny" of an intervenor's interest may be "inappropriate" insofar as the rule makes no mention of interest. Wright, Miller & Kane § 1911.

As to the third requirement, there is no indication that allowing intervention will result in undue delay or prejudice to the existing parties. American Efficient argues that allowing intervention would delay the resolution of its pending motion for preliminary injunction. (Doc. 28 at 7-10, 17.) But this concern

is moot as the present memorandum opinion and order resolves both motions simultaneously.  American Efficient cautions that allowing CUB to intervene may invite a proliferation of intervenors (id. at 18), but this concern is unfounded.  There are currently no other movants for intervention in this action, and the court has no doubt about its ability to consider any advantages or disadvantages of allowing additional parties if and when they arise.  Finally, American Efficient argues that granting intervention will lead to inefficiency and "duplicative briefing."  (Id.)  But this is unlikely.  The issues CUB is most vocal about – raising defenses that FERC has elected not to raise – will not involve duplicate briefing.  Otherwise, the court would face the same considerations even if it were to permit CUB to participate only by way of amicus.  In the final analysis, CUB's arguments – ones that FERC has declined to make – have the potential to contribute significantly to the just and equitable adjudication of the legal issues presented.  Brennan, 579 F.2d at 191-92; New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 472 (5th Cir. 1984) (noting that adequacy of representation and contribution to full consideration of issues in dispute are proper factors for permissive intervention).

Because CUB satisfies the requirements of Rule 24(b)(1)(B), the court in its discretion will grant its motion for permissive intervention.

11

**B.   Motion for Preliminary Injunction**

The court next considers American Efficient's motion for preliminary injunction.

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Id. at 20. All four factors must be demonstrated. The purpose of a preliminary injunction is "to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017). To demonstrate a likelihood of success on the merits, "[a] plaintiff need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." Id.

American Efficient argues that it is likely to succeed on the merits because the claims against it in the Show-Cause Order are legal in nature, necessitating a jury trial in an Article III court. (Doc. 3 at 19-29.) It next argues that it is likely to suffer irreparable harm because the proceedings against it are an irreparable constitutional violation, and also because an adverse

12

outcome will likely force its dissolution. (Id. at 30-34.)
Finally, American Efficient argues that both the balance of the
equities and the public interest favor an injunction because it
seeks to vindicate its constitutional rights. (Id. at 35.)

### 1. Likelihood of Success on the Merits

American Efficient must first show that it is likely to
succeed on the merits. For purposes of the present motion,
American Efficient relies exclusively on its claims in Count One
of the complaint. (Doc. 1 at 112-17; see Doc. 41 at 41-42.) Thus,
the court limits its inquiry to American Efficient's likelihood of
success on those claims.

American Efficient argues that it is likely to succeed on its
Seventh Amendment and Article III claims on the ground that the
Supreme Court's recent ruling in Securities & Exchange Commission
v. Jarkesy, 603 U.S. 109 (2024), controls the facts of this case.
(Doc. 3 at 8.) In Jarkesy, the Court held that the SEC violated
the Seventh Amendment by requiring respondents accused of
securities fraud to defend themselves from potential civil
penalties in an administrative process without a jury. 603 U.S.
at 140. The Court also ruled that the SEC's administrative
proceedings fell outside the "public rights" exception, which
allows certain matters to be resolved by an agency instead of an
Article III court. Id. at 134.

American Efficient contends that the market manipulation and

13

tariff violation claims against it in the Show-Cause Order are akin to common-law claims for fraud and breach of contract, similar to the securities fraud claims at issue in <u>Jarkesy</u>, thus implicating the Seventh Amendment right to trial by jury. (Doc. 3 at 20-24). It further argues that these claims do not concern historical "public rights" that would permit adjudication outside an Article III court and without a jury. (<u>Id.</u> at 24-27.) FERC and CUB respond that FERC's adjudicative processes fully satisfy the requirements of the Seventh Amendment and Article III, because American Efficient will have an opportunity for a de novo jury trial on all claims before a United States District court under 16 U.S.C. § 823b(d)(3)(B). (Doc. 19 at 26; Doc. 22-6 at 13-16.)

To evaluate American Efficient's likelihood of success on the merits, the court must consider FERC's contentions that (1) American Efficient lacks standing to bring this action, (2) the Show-Cause Order does not implicate the protections of Article III and the Seventh Amendment, and (3) even if so, American Efficient's opportunity for a de novo jury trial after FERC assesses a penalty will satisfy those constitutional requirements. Each consideration will be addressed in turn.

### a. Standing

As a threshold matter, FERC argues that American Efficient is unlikely to succeed because it lacks standing and its claims are not ripe. At the preliminary injunction stage, American Efficient

14

must make a clear showing that it is likely to establish each of the elements of Article III standing, i.e., actual or imminent injury, traceability, and redressability. See <u>Murthy v. Missouri</u>, 603 U.S. 43, 58 (2024); <u>South Carolina v. United States</u>, 912 F.3d 720, 726 (4th Cir. 2019)). FERC argues that American Efficient's alleged injury — assessment of a civil penalty — rests upon "contingent future events that may not occur as anticipated or indeed may not occur at all." (Doc. 19 at 23 (quoting <u>South Carolina</u>, 912 F.3d at 730.) American Efficient argues that it has standing based on the immediacy of a penalty assessment and the fact that it has been forced to undergo an allegedly unconstitutional administrative proceeding, with attendant costs for doing so. (Doc. 25 at 8-9.)

The record demonstrates that American Efficient has established a "substantial risk" that FERC will assess a penalty against it. (Doc. 25 at 9 (quoting <u>Murthy</u>, 603 U.S. at 58).) FERC based the proposed penalties and amounts in its Show-Cause Order on FERC's Staff Report (Doc. 19-1 at 9), which FERC's internal Office of Enforcement completed at the conclusion of its investigation. FERC acknowledges that it assesses civil penalties consistent with the Office of Enforcement's recommendations in over 60% of cases. (<u>See</u> Doc. 19 at 23.) While FERC may sometimes assess penalties or accept settlements in lesser amounts than the Office of Enforcement recommends, it can only identify one case

15

where it declined to assess any penalty at all – and in that case, the Office of Enforcement had altered its recommendation to vacate the order to show cause and assess no penalty. (Doc. 19 at 23-24; see Footprint Power LLC Footprint Power Salem Harbor Operations LLC, 166 FERC ¶ 61,150, at P 7 (2019).)

It is true, as noted infra, that American Efficient appears to have no legal obligation to pay any penalty assessed by FERC until the entry of a final judgment in an enforcement action under 16 U.S.C. § 823b(d)(3)(B). However, the likelihood that a penalty will be assessed is sufficient to satisfy Article III standing. To support standing, an actual or imminent injury must be "concrete," but "intangible injuries can nevertheless be concrete." Spokeo, Inc. v. Robins, 578 U.S. 330, 339-40 (2016). American Efficient has represented, without contest, that the assessment of a penalty would trigger an event of default with its lender, precipitating potential foreclosure and insolvency. (Doc. 41 at 13, 85.) For the purpose of standing, this injury is sufficient.

In addition, American Efficient claims that it has standing because it is subject to an ongoing unconstitutional proceeding, which it argues constitutes a "here-and-now" constitutional injury sufficient to establish standing. (Doc. 25 at 8 (citing Seila Law LLC v. CFPB, 591 U.S. 197, 212 (2020).) FERC has not addressed whether an ongoing, allegedly unconstitutional proceeding is a

16

concrete injury sufficient to establish standing, although it contests the unconstitutionality of its proceedings against American Efficient on the merits, as discussed _infra_.

In _Seila Law_, the Supreme Court held that being compelled to comply with an executive agency's civil investigative demand, including requirements to provide documents, was a "concrete injury" that established standing "beyond dispute." 591 U.S. at 211. As American Efficient correctly notes (Doc. 25 at 8), the Supreme Court has held that district courts may hear cases from respondents who seek to enjoin ongoing administrative proceedings against them on constitutional grounds. See _Axon Enter., Inc. v. Fed. Trade Comm'n_, 598 U.S. 175, 183-185 (2023) (ruling that administrative proceedings with statutory review schemes do not "divest district courts of jurisdiction" for broader constitutional claims). Here, American Efficient has been required to comply with FERC's investigative demands and produced documents in the administrative proceeding. (Doc. 31-2 (Staff Report).) This also suffices to demonstrate injury to support Article III standing.

Neither FERC nor CUB disputes that American Efficient satisfies the remaining elements of Article III standing; namely, traceability and redressability. To be sure, the ongoing FERC proceedings and any civil penalty assessed would plainly be traceable to FERC's conduct, and these alleged injuries would be

17

redressable by an order enjoining those proceedings.

Thus, the court finds that American Efficient has made a clear showing that it is likely to establish Article III standing for its claims, which is all that is required at the preliminary injunction stage. <u>Murthy</u>, 603 U.S. at 58.

### b. Seventh Amendment and Article III

The court next considers whether the Show-Cause Order and proceedings against American Efficient implicate the protections of the Seventh Amendment[2] and Article III. <u>Jarkesy</u> provides that federal statutory claims must be tried in an Article III court before a jury if the claims are "legal in nature" and do not fall within a narrow category of traditional "public rights" that may be determined exclusively by the executive or legislative branch. 603 U.S. at 122, 127-28. To determine if a statutory claim is legal in nature, courts consider whether it resembles a common law cause of action and whether the remedy it provides was traditionally obtained in a court of law, although the remedy is the more important consideration. <u>Id.</u> at 122-23.

FERC's claims against American Efficient in the Show-Cause Order fall into two categories: market manipulation and tariff violations. (<u>See</u> Doc. 19-1 at 65-107.) American Efficient

---

[2] The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

contends that the civil penalties FERC threatens to assess are traditional legal remedies, and that the market manipulation claims and tariff violation claims in the Show-Cause Order are akin to common-law claims for fraud and breach of contract, respectively, thus implicating the Seventh Amendment right to trial by jury. (Doc. 3 at 20-24.) It further contends that neither category of claims concerns historical "public rights" that would permit adjudication outside an Article III court and without a jury. (Id. at 24-27.)

### i.  Nature of Remedies Sought

American Efficient contends that the claims against it in the Show-Cause Order are "legal in nature" because the civil penalties and disgorgement FERC seeks are punitive legal remedies. (Id. at 20-23.) For purposes of the present motion, FERC does not contest this characterization. (Doc. 41 at 76.) CUB argues that the claims in the Show-Cause Order fall under the "public rights exception," as discussed below.

With respect to civil penalties, FERC's guidelines "are designed to generate a penalty range that is high enough to serve to provide just punishment [and] deterrence[.]" Revised Statement on Penalty Guidelines, 132 FERC ¶ 61,216, at P 216 (2010). As American Efficient notes, a monetary remedy is legal "if it is designed to punish or deter the wrongdoer." (Doc. 3 at 20 (quoting Jarkesy, 603 U.S. at 123).) Such penalties are "a type of remedy

19

at common law that could only be enforced in courts of law." _Jarkesy_, 603 U.S. at 125 (quoting _Tull v. United States_, 481 U.S. 412, 422 (1987)). Thus, the $722 million combined civil penalty FERC's Staff Report seeks to have imposed for American Efficient's alleged market manipulation and tariff violations indicates that both sets of claims are "legal in nature" and must be tried before a jury.[3] _Jarkesy_, 603 U.S. at 124-25.

### ii. Market Manipulation Claims

American Efficient contends that the market manipulation claims in the Show-Cause Order are legal in nature because the underlying anti-fraud provisions have a "close relationship" to common law fraud. (Doc. 3 at 22.) It points to _Jarkesy_, where the Supreme Court held that "the close relationship between federal securities fraud and common law fraud" confirmed its conclusion, separately reached by considering the nature of the remedy, that the respondent was entitled to a jury trial. (Doc. 3 at 22-23 (citing _Jarkesy_,603 U.S. at 125).) As American Efficient points out, the anti-fraud provisions in FERC's "Anti-Manipulation Rule"

---

[3] Whether disgorgement is a remedy that is "legal in nature" is less clear. FERC's guidelines expressly distinguish the punitive purpose of civil penalties from the distributive purpose of disgorgement. _See Revised Statement on Penalty Guidelines_, 132 FERC ¶ 61,216, at P 216. Nevertheless, as American Efficient points out, even if the court were to treat disgorgement as an equitable remedy, "when legal and equitable claims are joined in the same action, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." (Doc. 3 at 21-22 (quoting _Lytle v. Household Mfg., Inc._, 494 U.S. 545, 550 (1990)).)

Case 1:25-cv-00068-TDS-JEP   Document 43   Filed 11/24/25   Page 20 of 34

are virtually identical to the anti-fraud provisions the SEC relied on in Jarkesy.[4]  (Doc. 3 at 22; see Jarkesy, 603 U.S. at 116.)

CUB responds that, unlike the SEC's anti-fraud provisions, FERC's market manipulation provisions concern a public right because they exist solely to secure the integrity of a "broader regulatory regime that sets technical standards for reliable interstate electricity markets."  (Doc. 22-6 at 22 (citation omitted).)  This argument is doubtful, however.  "If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory."  Jarkesy, 603 U.S. at 128 (citing Stern v. Marshall, 564 U.S. 462, 484 (2011)f.  "[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Article III courts."  Id. at 132 (quoting N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69 n.23 (1982)).  CUB cites Crowell v. Benson, 285 U.S. 22 (1932), and Passavant v. United States, 148

---

[4] The fraud claims that implicated the Seventh Amendment in Jarkesy were brought under, among other provisions, 17 C.F.R § 240.10b-5, which makes it illegal for any person in connection with the sale or purchase of securities to "employ any device, scheme, or artifice to defraud," to "make any untrue statement of a material fact", or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  Here, American Efficient is accused of violating the FERC Anti-Manipulation Rule, 18 C.F.R. § 1c.2, which makes it illegal for any person in connection with the sale or purchase of electrical energy or transmission services to "employ any device, scheme, or artifice to defraud," to "make any untrue statement of a material fact," or to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

U.S. 214 (1893)), for the proposition that civil penalties can be imposed outside an Article III court when a matter "already [meets] the public rights exception." (Doc. 22-6 at 23 (emphasis added).) But the disputes in Crowell and Passavant dealt with matters under admiralty jurisdiction and customs enforcement, respectively – both traditional exceptions to the Seventh Amendment jury trial right. See Jarkesy, 603 U.S. at 152-53, 155 (Gorsuch, J., concurring). Here, FERC's market manipulation claims provide remedies traditionally reserved to courts of law and which closely resemble a common law cause of action. The fact that these claims are situated in a "broader regulatory regime" (Doc. 22-6 at 16) does not overcome the presumption that they concern private rights and must be tried by a jury in an Article III court. American Efficient thus has established a likelihood of success on this contention.

### iii.     Tariff Violation Claims

American Efficient likewise argues that the "close, albeit not identical" relationship between the tariff violation claims in the Show-Cause Order and common law claims for breach of contract confirm that the tariff violation claims are legal in nature. (Doc. 3 at 23-24.) While American Efficient acknowledges that "federal tariffs are the law, not mere contracts," it argues that they resemble and serve as an alternative to bilateral contracts. (Id. at 23 (emphasis omitted) (quoting Bryan v. BellSouth Commc'ns,

22

<u>Inc.</u>, 377 F.3d 424, 429 (4th Cir. 2004)).) As it notes, the terms of federal tariffs are interpreted "in accordance with general contract law." <u>Midcontinent Indep. Sys. Operator, Inc.</u>, 186 FERC ¶ 61,088, at P 29 (2024). Thus, American Efficient contends, the alleged violations of the terms of the MISO and PJM tariffs bear a "close relationship" to common law breach of contract, "confirm[ing] that this action is legal in nature." (Doc. 3 at 24 (quoting <u>Jarkesy</u>, 603 U.S. at 126).)

FERC does not respond to American Efficient's argument. CUB responds that the tariff claims against American Efficient fall under the "public rights" exception because they are part of a "complex regulatory regime" comparable to that created by the Occupational Safety and Health Act ("OSH Act"). (Doc. 22-6 at 16-18 (citing <u>Jarkesy</u>, 603 U.S. at 136-37)(internal quotation marks omitted).) CUB cites <u>Atlas Roofing Co. v. Occupational Safety and Health Review Commission</u>, where the Supreme Court held that administrative adjudication without a jury under the OSH Act's regulatory scheme fell under the public rights exception and did not violate the Seventh Amendment when it involved "a new cause of action, and remedies therefor, unknown to the common law." 430 U.S. 442, 461 (1977). American Efficient replies that the complexity of the tariff regime is irrelevant when FERC's claims "bear a close relationship to common law breach of contract claims," noting that "contracts, of course, can be complex,

23

technical, or specific without altering the fundamental nature of a breach of contract claim."  (Doc. 42 at 11 (citation omitted).)

Jarkesy clarified that the public rights exception does not apply to statutory claims that are "in the nature of an action at common law."  603 U.S. at 138.  Because the tariff violation claims in the Show-Cause Order are "in the nature" of common law claims for breach of contract, — though not, as American Efficient concedes, "identical" — they presumptively concern private, not public rights, and must therefore be tried by a jury.  As with the market manipulation claims, their place in broader regulatory regime does not overcome that presumption.

For the foregoing reasons, American Efficient has demonstrated that it is likely that FERC's claims of market manipulation and tariff violations fall within the categories to which a right to jury trial before an Article III court attaches.

Having made these determinations, the court turns to whether FERC's administrative process vitiates that right.

### c. Constitutional Sufficiency of Post-Assessment Trial

A recipient of an order to show cause from FERC may choose between an administrative hearing before a FERC-appointed administrative law judge pursuant to 16 U.S.C. § 823b(d)(2) or a prompt assessment by FERC itself pursuant to 16 U.S.C. § 823b(d)(3) (the "prompt assessment route").  See U.S.C. § 823b(d)(1).  If, as

24

American Efficient has done, the respondent elects the prompt assessment route, FERC "shall promptly assess" any civil penalty by order. 16 U.S.C. § 823b(d)(3)(A). If the civil penalty is not paid within 60 days, FERC "shall institute an action in the appropriate district court of the United States for an order affirming the assessment of the civil penalty." 16 U.S.C. § 823b(d)(3)(B). The district court "shall have authority to review de novo the law and the facts involved" and may "enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part" the penalty assessed. Id.

FERC and CUB argue that FERC's ongoing proceedings against American Efficient do not infringe on its constitutional rights because American Efficient will be able to relitigate de novo any penalties assessed before a jury in a subsequent enforcement action in federal district court. (See Doc. 19 at 26; Doc. 22-6 at 13-16.) Because of this, they argue, this case is distinguishable from Jarkesy, where the only Article III review available after an in-house adjudication by the Securities Exchange Commission was "deferential." (Doc. 19 at 25 (quoting Jarkesy, 603 U.S. at 117).)

American Efficient maintains that a de novo trial pursuant to § 823b(d)(3)(B) is not constitutionally sufficient when such a trial can occur only after a penalty has already been assessed. This is inadequate, American Efficient argues, because in order to be entitled to an Article III jury trial it must first "participate

25

in the administrative proceeding, wait until FERC adjudicates guilt and issues a penalty order, refuse to pay the assessed penalty . . . then wait for FERC to bring a separate action in federal court, potentially years later." (Doc. 25 at 12.) Additionally, American Efficient asserts (FERC and CUB disagree) that interest will begin to accrue on any penalty assessed by FERC after 60 days and will continue to accrue throughout the pendency of FERC's district court enforcement action. (Cf. Doc. 3 at 15, 28; Doc. 41 at 69; Doc. 22-6 at 16.) American Efficient concludes that "[t]he Seventh Amendment guarantees a jury trial before, not after, the government has imposed civil penalties on private parties." (Doc. 3 at 29.)

### i.  Accrual of Interest

Key to American Efficient's argument is its contention that it will be responsible for accrued interest on FERC's penalty award even if FERC elects to enforce the award with a de novo federal court jury trial. American Efficient contends that interest begins to accrue sixty days after FERC issues a final order assessing a penalty. (Doc. 3 at 15, 28.) If true, this would limit the benefit of a post-assessment trial under § 823b(d)(3)(B) because, as American Efficient notes, FERC has up to five years to bring a federal court enforcement action and thus could penalize respondents who insist on trial by delaying, thus running up the interest. (See Doc. 3 at 29; Doc. 25 at 12.)

26

However, as FERC acknowledged at the hearing, its regulations do not allow it to charge interest on penalties assessed under the prompt assessment route until after a district court enters final judgment affirming the penalty. (See Doc. 41 at 69-70; 18 C.F.R. §§ 385.1511, 385.1509.)[5] American Efficient responds that FERC does not follow its own regulations in practice, pointing to multiple FERC penalty assessment orders where respondents were advised that failure to pay "within the stated time period" would cause interest to accrue "from the date payment is due." (Doc. 42 at 6, citing Ketchup Caddy, LLC & Philip Mango, 189 FERC ¶ 61,176 at P 91 (2024) (additional citations omitted).) But, on close inspection, those orders only indicate that the respondents were advised that interest would accrue per the regulatory scheme;[6]

---

[5] The regulation, 18 C.F.R. § 385.1511 (Collection of civil penalties (Rule 1511)), provides: "If any person fails to pay a civil penalty assessment, the Commission will seek to recover the amount of the penalty plus interest in any appropriate District Court of the United States. Interest will begin to accrue on the date the Commission issues a final order under Rule 1508 or the date on which the appropriate District Court enters final judgment in favor of the Commission under Rule 1509." Thus, the regulation allows for interest to accrue for respondents who elect to proceed before the FERC administrative law judge, thus foregoing the de novo jury trial right; interest runs on any award in a de novo federal court trial only from the date of final judgment.

[6] For example, one order reads, "If [respondent] fails to make the civil penalty payment within the stated time period, interest payable to the United States Treasury will begin to accrue pursuant to the Commission's regulations at 18 C.F.R. § 35.19a from the date that payment is due." Vitol Inc. & Federico Corteggiano, 169 FERC ¶ 61,070, at P 247 (https://www.ferc.gov/sites/default/files/2020-05/20191025181336-IN14-4-000.pdf). Read in conjunction with 18 C.F.R. § 385.1511, this indicates, contrary to American Efficient's suggestion, that where FERC must enforce a penalty assessment in federal district court, interest

27

there is no statement by FERC that interest would accrue from the date of FERC's assessment even if FERC sought an enforcement action in federal district court. Regardless, FERC has conceded in the present case that if American Efficient puts it to the requirement of a federal court enforcement action, interest will not begin to accrue on any penalty until a district court enters final judgment. (See Doc. 41 at 69-70.) Consequently, American Efficient has not demonstrated that it is likely to prevail as to its contentions about interest.

### ii.    Post-Assessment Enforcement Action

The question then is whether the post-assessment enforcement action provided by § 823b(d)(3)(B) satisfies the Seventh Amendment and Article III. American Efficient contends that before it can exercise its right to trial by jury, it must first "complete a costly adjudicative proceeding before FERC," then "disobey [FERC's] direction to pay civil penalties," and finally "be subject to a Sword of Damocles as it waits for FERC to bring a separate federal court action to affirm the penalty." (Doc. 3 at 29.) In addition, American Efficient points out that FERC uses prior penalty assessments to enhance penalties in subsequent FERC proceedings – proof that penalty assessments are in effect "final, legally binding orders." (Doc 42. at 5, 7); see Revised Statement

---

will not begin to accrue until the date that payment is due, i.e., until the entry of final judgment by a district court.

on Penalty Guidelines, 132 FERC ¶ 61,216, at P 159-66. Thus, American Efficient concludes, it is entitled to a jury trial before, not after, any penalty is assessed. (Id. at 5.)

American Efficient relies on a recent Fifth Circuit decision, AT&T, Inc. v. Federal Communications Commission, to support its argument. (Doc. 31 at 1 (citing 135 F.4th 230 (5th Cir. 2025) (withdrawn and superseded by AT&T, Inc. v. FCC, 149 F.4th 491 (5th Cir. 2025)).) In that case, AT&T challenged a Federal Communications Commission ("FCC") forfeiture order on grounds parallel to American Efficient's claims here, arguing that the FCC's administrative proceedings violated AT&T's Seventh Amendment and Article III rights under Jarkesy. AT&T, 149 F.4th at 494. The Fifth Circuit held that the possibility of an action to enforce the forfeiture order under 47 U.S.C. § 504(a) was insufficient to satisfy AT&T's right to a jury trial in an Article III court. AT&T, 149 F.4th at 503; cf. 16 U.S.C. § 823b(d)(3)(B). The court's reasoning mirrored the arguments American Efficient makes here. There, as here, a respondent who desires a jury trial must first refuse to pay a penalty and wait for the Department of Justice to "drag it into court." AT&T, 149 F.4th at 503. The court also noted that, as here, the FCC considers "any history of prior adjudicated offenses in imposing future penalties."[7] Id. The

---

[7] Notably, the court did not reference 47 U.S.C. § 504(c), which provides:

court found that the Seventh Amendment and Article III could not be satisfied by "a trial occurring after an agency has already found the facts, interpreted the law, adjudged guilt, and levied punishment." Id.

However, as FERC argued at the hearing (Doc. 41 at 49), two other circuits have reached a contrary conclusion. In Sprint Corporation v. Federal Communications Commission, the Court of Appeals for the District of Columbia Circuit held that the option to wait for an FCC post-penalty enforcement action under § 504(a) was sufficient to satisfy appellants' Seventh Amendment and Article III rights. 151 F.4th 347, 361 (D.C. Cir. 2025). The court acknowledged that "the right to a jury trial is a procedural protection that must be honored before 'legal rights are determined' and 'legal relief' is awarded," but it found that "no legal rights are determined and no legal relief is awarded" by an administrative penalty that is not enforced. Id. (quoting Lorillard v. Pons, 434 U.S. 575, 583 (1978)). In so doing, the court noted that the authorizing statute specifically prevented the use of unpaid or unenforced penalties in future proceedings. Id. at 362 n.5; see 47 U.S.C. § 504(c).

―――――――――――――――――

"In any case where the Commission issues a notice of apparent liability looking toward the imposition of a forfeiture under this chapter, that fact shall not be used, in any other proceeding before the Commission, to the prejudice of the person to whom such notice was issued, unless (i) the forfeiture has been paid, or (ii) a court of competent jurisdiction has ordered payment of such forfeiture, and such order has become final."

Similarly, in Verizon Communications Inc. v. Federal Communications Commission, Verizon challenged the FCC's decision to levy a forfeiture against it. 156 F.4th 86 (2d Cir. 2025). Noting that Verizon had paid the levy, thus waiving its statutory right to force the FCC to seek enforcement through a de novo jury trial, the Second Circuit held that, even assuming the Seventh Amendment right to jury trial applied to the FCC administrative proceeding, the requirement of a de novo post-penalty enforcement action in federal court under § 504(a) was constitutionally sufficient. Id. at 105-06. In addressing Verizon's argument that an administrative penalty caused it other harms – namely, the fact that FCC policy permits it to "us[e] the underlying facts of a prior violation that shows a pattern of non-compliant behavior against a licensee in a subsequent renewal, forfeiture, transfer, or other proceeding" – the court found this fell short of an effort to collect money damages, to which the jury trial right attaches. Id. at 106 (noting the Seventh Amendment "requires a jury trial only upon an effort to collect payment of monetary damages" (citing Jarkesy, 603 U.S. at 123).) Where the government declines to pursue a collection action under §504(a), the court concluded, Verizon would be under no obligation to pay and would suffer no Seventh Amendment injury. Id.

No party, or CUB, has cited any Fourth Circuit authority addressing whether a post-penalty enforcement action is sufficient

31

to satisfy the Seventh Amendment under Jarkesy, and the court has found none. This leaves Jarkesy, which is not directly on point, and a circuit split on the issue in the closely-related FCC context. Notably, AT&T, upon which American Efficient relies, found important the "real-world impact[]" of the agency's ability to rely on a "history of prior adjudicated offenses in imposing future penalties," 149 F.4th at 503 – a conclusion that seemingly overlooks § 504(c)'s ban on doing so absent final judicial review. What the agency apparently does, according to its guidance, is consider facts it determined from the prior proceeding as it finds facts for consideration of other matters to which a jury trial right clearly does not attach, such as licensing. Verizon, 156 F.4th at 106 (citing In re Comm'n's Forfeiture Pol'y Statement & Amend. of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines, 12 FCC Rcd. 17087, 17103 (1997)); see Sprint, 151 F.4th at 361 (rejecting contention that prior agency orders can be used in future proceedings absent payment or final judgment, citing § 504(c)). This is very different from the harm alleged in these cases and is nearly indistinguishable from the agency's ability to find facts for those other decisions, such as licensing. See Meeker v. Lehigh Valley R.R. Co., 236 U.S. 412, 430-31 (1915) (finding that portion of Interstate Commerce Commission Act permitting agency findings to be prima facie evidence of the facts stated therein in subsequent jury trial to enforce payment not a

32

violation of the Seventh Amendment).

The reasoning of the Second and D.C. Circuit cases has some force. Unlike the procedures ruled unconstitutional in Jarkesy, neither FERC's nor the FCC's administrative procedures empowers the agency to compel payment without fully litigating its claims de novo in a jury trial in United States District Court. Absent an enforcement action under § 823b(d)(3)(B), a FERC administrative penalty may still have "real-world impacts" on American Efficient's business -- but not of the sort that likely rise to the level of a constitutional violation. The limited effect of an unenforced FERC assessment in future proceedings does not suggest that the assessment determines "legal rights." Lorillard, 434 U.S. at 583. And if FERC were to use an unenforced assessment to enhance penalties in a subsequent proceeding, then those subsequent penalties – and any facts supporting them, including prior assessments – must still be affirmed in a de novo trial before American Efficient would have any obligation to pay. In this light, the fact that only FERC may trigger a federal court jury trial does not appear to be an infringement on the Seventh Amendment right. Cf. Cap. Traction Co. v. Hof, 174 U.S. 1 (1899) (finding District of Columbia law that permitted damages claim to be tried by a jury before justice of peace where both parties had right of de novo jury trial thereafter not violative of the Seventh Amendment).

Case 1:25-cv-00068-TDS-JEP    Document 43    Filed 11/24/25    Page 33 of 34

Considering the body of law as a whole, the court is not persuaded that American Efficient has made a clear showing that it is likely to prevail on its claim that FERC has infringed on its right to a jury trial.

### 2. Remaining **Winter** Factors

Because American Efficient has not established that it is likely to prevail on Claim I, the court need not reach the remaining Winter factors. Vitkus v. Blinken, 79 F.4th 352, 361 (4th Cir. 2023). Accordingly, American Efficient's motion for preliminary injunction will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Defendant-Intervenor CUB's motion to intervene (Doc. 22) is GRANTED;

IT IS FURTHER ORDERED that Plaintiff American Efficient's motion for preliminary injunction (Doc. 2) is DENIED; and

IT IS FURTHER ORDERED that CUB file its proposed answer (Doc. 22-5) and proposed opposition to Plaintiffs' motion for a preliminary injunction (Doc. 22-6), both previously attached to its motion to intervene, as separate documents forthwith.


                                    /s/   Thomas D. Schroeder
November 24, 2025                United States District Judge